27891. MORGAN *v.* HUTCHESON.

DECIDED FEBRUARY 28, 1940.

*N. B. Hargroves, S. W. Fariss, F. M. Gleason,* for plaintiff.
*Julius Rink, Rosser & Shaw,* for defendant.

SUTTON, J. Gladys M. Morgan brought suit against John M. Hutcheson in four counts, the first count alleging substantially as follows: That the defendant is indebted to her in the sum of $1537.50, together with interest from October 17, 1935, to date, by reason of the following facts: that on August 4, 1934, Charles B. Moore, the former husband of plaintiff and a world-war veteran, died as the result of illness contracted in line of duty while serving as an enlisted man in the United States army; that a war-risk insurance policy had been issued on the life of said veteran, and plaintiff was the sole and only heir at law of the said Charles B. Moore and entitled to the proceeds of the policy; that on February 9, 1935, the United States Government paid to the administrator of the estate of the said Moore two checks for the total sum of $11,661.50, of which amount plaintiff received, on October 17, 1935, the sum of $11,261, the same having been paid through the branch office of a certain bonding company and plaintiff having previously arranged a bond; that on or about October 9, 1934, through no effort of the defendant, the Insurance Claims Council of the Veterans Administration rendered a decision awarding to plaintiff the face value of said policy of insurance; that at some time between the date of said award and December 7, 1934, the defendant discovered that the United States Government, through its proper

department, had accepted liability under said policy of insurance, the defendant being the service officer for the American Legion at LaFayette, Georgia, and by reason thereof he was in a position to, and did, receive confidential information regarding the approval of claims before the beneficiaries themselves had notice thereof; that on December 7, 1934, the defendant notified plaintiff to come to his office in LaFayette, Georgia, at which time he insisted that she enter into a written contract with him, a copy of which contract is attached to and made a part of the petition, marked exhibit A, under the terms of which plaintiff would pay to the said defendant 15 per cent. of a sum not to exceed $12,500 "for services rendered and to be rendered in the collection of insurance due the estate of Charles B. Moore, deceased, or that portion which" plaintiff should receive as her part of the estate, and under the terms of which it was further agreed that in the event of a lawsuit the defendant was to receive a sum not in excess of 12½ per cent.; that the said contract was drawn up by the defendant and was signed by him and the plaintiff; that at no time during the entire period to which the facts shown in the petition refer was the defendant an attorney at law, qualified to practice law in this or any other State; that plaintiff was wholly ignorant of her rights in the premises and of the law governing the payment of attorney's fees for assisting in the preparation and execution of necessary papers in applying to the Veterans Administration for governmental awards; that prior to entering into the aforesaid contract the defendant represented to plaintiff that he was responsible for the acceptance of liability by the government, under the policy of war-risk insurance aforesaid, and plaintiff alleges that this representation by the defendant was wholly unwarranted by the facts, and this the defendant well knew when making said representation; that upon the strength of defendant's representations plaintiff entered into the said contract to her injury; that she was totally ignorant of the law in regard to the illegal practice of law in this State, and she did not know at the time of entering into said contract, and has only recently learned, that the alleged services called for by the contract on the part of the defendant, both past and in the future in relation to the date of said contract, would amount to and constitute an illegal practice of law by one not authorized to do so; that without any effort on the part of the defendant and wholly inde-

pendent of any alleged service rendered by him, the United States Government paid to the administrator of the estate of the said Charles B. Moore the sum of $11,661.50, and on October 17, 1935, plaintiff and defendant were informed that a certain bonding company had in its branch office in Knoxville, Tennessee, a check in the sum of $11,261 representing a portion of the proceeds of such war-risk insurance due and payable to plaintiff, and plaintiff and defendant accordingly went to Knoxville and there received the said check; that subsequently plaintiff and the defendant returned to Chattanooga, where the defendant insisted that he be paid the sum of $1537.50 as charges for his alleged services in procuring the payment of said award of insurance, the defendant having agreed to relinquish a portion of the amount allegedly due him under the said contract in order to induce the plaintiff to accept the amount tendered by the bonding company, which was less than the total amount paid to the administrator and which plaintiff felt was not the total sum to which she was then entitled; that in pursuance of said demand of the defendant, and acting upon the representations which he made to her, and in ignorance of the fact that she was not bound by the contract into which she had entered with the defendant, that defendant had no legal right to accept any portion of the funds derived by plaintiff from the said policy of war-risk insurance, that defendant had rendered no services causing the United States Government to make said award, that the defendant was engaged in the illegal practice of law, and thinking herself bound by said contract, plaintiff did, on October 17, 1935, issue to defendant her check in the sum of $1537.50, a copy of which is attached to the petition as exhibit B and made a part thereof, for the alleged services rendered by defendant in procuring the funds from the policy for the plaintiff; that at the time the said payment was made by her there was in force a Federal statute providing as follows: "That payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the Bureau shall not exceed $10 (ten dollars) in any one case. Any person who shall directly or indirectly solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, or receive any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable

by a fine of not more than $500, or by imprisonment at hard labor for not more than two years, or by both such fine and imprisonment. . ." 38 U. S. C. A. § 551; that the defendant knowingly entered into an unlawful contract with plaintiff, which fact was known to him but was unknown to plaintiff, and that in entering into said contract and in charging and receiving said sum of $1537.50 the defendant violated the provisions of the Federal statute above quoted, violated those provisions of the Georgia law in regard to the illegal practice of law, and, in addition, fraudulently induced plaintiff to believe that his services were valuable, when in fact no alleged service of the defendant proximately or indirectly caused the United States Government to pay the said award or plaintiff to receive the same. ..Copy of the contract entered into between plaintiff and the defendant on December 7, 1934, as per exhibit A, provided as follows: "That the party of the first part agrees to pay to the party of the second part 15 per cent. of a sum not to exceed $12,500 for services rendered and to be rendered in the collection of insurance due the estate of Charles B. Moore, deceased, or that proportion which she received as her part of the estate. Party of the second part is not to receive any per cent. in access [excess] of twelve thousand, five hundred ($12,500) dollars. It is further agreed that in the event of a lawsuit over this estate the party of the second part is not to receive in access [excess] of 12½ per cent." Judgment was prayed for in the sum of $1537.50 with interest from October 17, 1935, and costs of suit.

Count 2 of the petition alleged that defendant was indebted to the plaintiff in the sum of principal and interest hereinbefore named, the said amount of principal having been received by defendant on a certain check, dated October 17, 1935, a copy of which was attached to the petition as exhibit B and made a part thereof and hereinbefore referred to, the said check having been given to the defendant in payment of attorney's fees pursuant to the terms of a contract, a copy of which was attached to the petition as exhibit A and made a part thereof and has hereinbefore been referred to; that defendant represented to plaintiff that he was a duly-licensed and qualified attorney at law at the time he made said contract and received said check, and plaintiff relied on these representations which she only recently learned were false; that the defendant is not a licensed attorney and never has been; that

the contract for attorney's fees was absolutely void and unenforceable, but that notwithstanding this fact, which was not known to the plaintiff until long after she had paid defendant the money aforesaid, defendant, by the fraudulent representation that he was an attorney at law, collected said monies from plaintiff as aforesaid; that plaintiff has demanded payment for said sum of money but defendant fails and refuses to pay the same or any part thereof. Judgment was prayed as in count 1.

Count 3 of the petition alleged that the defendant was indebted to plaintiff by reason of the receipt of money in the manner alleged in count 2, a copy of the check being attached to the petition as exhibit B and made a part thereof as hereinbefore recited; that the defendant induced the plaintiff to sign the contract, representing to her that he would render valuable legal and professional services to her in a certain claim plaintiff then had pending against the Government of the United States, as sole heir at law of Charles B. Moore, her deceased husband, who died as a result of disease contracted during the world war, a copy of which contract is attached to the petition as exhibit A and hereinbefore referred to; that the defendant rendered to plaintiff no service whatsoever, and the consideration for said payment, as aforesaid, has wholly failed, although such failure of consideration was unknown to plaintiff until after she had made payment of said money to the defendant, who represented to her that through his efforts and services payment of plaintiff's claim had been made by the government; that on December 7, 1934, the defendant was the service officer for the American Legion at LaFayette, Georgia, and by reason of this connection was in a position to receive, and did receive, confidential information regarding the approval of claims made by applicants for war-risk insurance benefits, and through this connection he learned that plaintiff's claim had been approved for payment by the Insurance Claims Council of the Veterans Administration on October 9, 1934; that he rendered no service whatever to plaintiff, as her claim had been approved and allowed long before he solicited employment by her, and she did not know, when she signed the contract on December 7, 1934, that her claim had been allowed as aforesaid; that shortly after, and within two weeks from, December 7, 1934, the defendant notified plaintiff that through his efforts he had procured the allowance of plaintiff's claim; that this

statement was false, although plaintiff did not know it until on or about January 1, 1938, and immediately upon learning of the fraud which had been perpetrated upon her she, through her attorney, demanded from defendant payment of the sum aforesaid, but that he has failed and refused to pay the same or any part thereof. Judgment was prayed as in count 1.

Count 4 alleged that the defendant was indebted to the plaintiff by reason of the receipt of money in the manner alleged in count 2, a copy of the check being attached to the petition as exhibit B and made a part thereof as hereinbefore recited; that defendant induced plaintiff to sign a certain contract, a copy of which is attached to the petition as exhibit A and made a part thereof as hereinbefore recited, representing to plaintiff that he was a licensed attorney at law, regularly practicing at LaFayette, Georgia; that plaintiff had pending before the Veterans Administration a certain claim to recover war-risk insurance benefits due her as the sole heir of Charles B. Moore, deceased, plaintiff's former husband, and defendant represented to her that he would collect her claim for the fees provided in said contract; that said contract was in direct violation of a Federal statute which provides: (38 U. S. C. A. § 551 as set out in count 1) ; that the said contract is by reason of the said statute null, void, and of no effect; that plaintiff at the time she paid the defendant the said money as aforesaid did not know that the contract, pursuant to which the payment was made, was in violation of the said Federal statute, although defendant knew at the time he made the contract and at the time payment was made to him that said contract was void and unenforceable; that the defendant has unlawfully taken and received money as aforesaid which belongs to the plaintiff, and although demand for payment thereof has been made the defendant fails and refuses to pay the same. Judgment was prayed for as in count 1.

The defendant filed general and special demurrers to each count of the petition. The court sustained the general demurrer, and the exception here is to that judgment.

Counts 1 and 4 of the petition set out a cause of action for money had and received. In these counts it is alleged that the defendant retains money under a contract which he induced the plaintiff to enter into with him, whereby the defendant was to be paid, on a certain basis, for "services rendered and to be rendered in the col-

lection of insurance due the estate of Charles B. Moore, deceased, or that portion which" the plaintiff should receive as her part of the estate, which insurance was shown to have been war-risk insurance due on a policy issued by the United States Government to the deceased while he was serving as an enlisted man in the United States army; that the contract entered into was unlawful and in violation of a Federal statute, 38 U. S. C. A. § 551, which provides: "Except in the event of legal proceedings under section 445 of this chapter, no claim agent or attorney, except the recognized representatives of the American Red Cross, the American Legion, the Disabled American Veterans, and Veterans of Foreign Wars, and such other organizations as shall be approved by the director, shall be recognized in the presentation or adjudication of claims under Parts II, III, and IV of this chapter, and payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the bureau shall not exceed $10 in any one case: Provided, however, That wherever a judgment or decree shall be rendered in an action brought pursuant to said section 445 of this chapter the court, as a part of its judgment or decree, shall determine and allow reasonable fees for the attorneys of the successful party or parties and apportion same if proper, said fees not to exceed 10 per centum of the amount recovered and to be paid by the bureau out of the payments to be made under the judgment or decree at a rate not exceeding one tenth of each of such payments until paid. Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive, any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable by a fine of not more than $500 or by imprisonment at hard labor for not more than two years, or by both such fine and imprisonment." It is contended by counsel for the defendant that the defendant did not violate the provisions of this statute, in that his charge for services did not relate to any act of preparing the necessary papers in an application for war-risk insurance benefits, and that it is only for such service that a charge in excess of $10 in the absence of suit is prohibited by the statute.

A former section of the war-risk insurance act, similar to the

present provision under consideration, section 13 of the act of October 6, 1917, 40 Stat. 398, c. 105, as amended by an act of May 20, 1918, 40 Stat. 555, c. 77, provided that payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in connection with a claim for benefits due under a war-risk insurance policy shall not exceed $3 in any one case, and it further provided that "Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable by a fine of not more than $500 or by imprisonment at hard labor for not more than two years, or by both such fine and imprisonment." One Margolin was found guilty under an indictment which charged that he had unlawfully received $1500 as a fee and compensation for services in preparing and presenting to the United States Veterans Bureau an affidavit executed by one Yetta Cohen in support of her claim for insurance money under the act. The trial court imposed a fine of $250 and its judgment was affirmed by the United States Circuit Court of Appeals. Margolin appealed the case to the United States Supreme Court, where the judgment was affirmed, the court saying: "Petitioner claims that the inhibition against receiving any sum greater than three dollars relates solely to the clerical work of filling out the form or affidavit of claim, and does not apply to useful investigation and preparatory work such as he did. He insists that this view is supported by the reports of the committees of the Senate and House of Representatives, which recommended passage of the bill; also by a communication from the Secretary of the Treasury, incorporated therein. See S. Rep. 429, and H. Rep. 471, 65th Cong., 2d Sess. We find no reason which would justify disregard of the plain language of the section under consideration. It declares that any person who receives a fee or compensation in respect of a claim under the act except as therein provided shall be deemed guilty of a misdemeanor. The only compensation which it permits a claim agent or attorney to receive where no legal proceeding has been commenced is three dollars for assistance in preparation and execution of necessary papers. And the history of the enactment indicates plainly enough that Congress did not

fail to choose apt language to express its purpose." Margolin v. United States, 269 U. S. 93, 101 (46 Sup. Ct. 64, 70 L. ed. 176). In Welty v. United States, 2 Fed. 2d, 562, 564 (C. C. A.), it was ruled with reference to the same statute: "As we interpret the statute, it permits a charge of $3 to the applicant himself for services in the preparation and execution of the necessary papers, and prohibits any charge whatsoever to him for any additional services in the prosecution of the claim."

In Purvis v. Walls, 184 Ark. 887 (44 S. W. 2d, 353), an attorney brought suit in the circuit court of Pulaski County, Arkansas, to recover damages in the sum of $1380 for alleged breach of a contract he claimed to have made with a beneficiary for collection of war-risk insurance benefits. The case was decided adversely to him in the trial court and the judgment was affirmed in the Supreme Court of Arkansas, which held that under the present statute, 38 U. S. C. A. § 551, he could not receive a fee in excess of $10 on each claim. Because of this attempt to collect more than such fee he was subsequently indicted and convicted in the district court of the United States, as shown by an opinion rendered in the Circuit Court of the United States, eighth circuit, 61 Fed. 2d, 992, in which the appellate court in a well-considered opinion held it to be a crime for one to take more than the amount allowed by statute unless an award be made in a court action to recover the benefits for the beneficiary.

While the authorities on the question are few in number we think that the foregoing cases sufficiently establish that under the statute the only compensation that an attorney or agent can lawfully collect for services rendered a beneficiary under a war-risk insurance policy, in respect of a claim for insurance benefits, where no judgment is obtained in a suit at law, is the sum of $10 for the preparation and execution of the necessary papers, and that services rendered, however extensive and helpful, in any other respect can be only gratuitous, and that the taking of more than such amount is per se unlawful and subjects one to criminal prosecution. It follows as a necessary corollary that, as the defendant herein received from the plaintiff the sum of $1537.50 by reason of an unlawful contract, he is holding funds which in equity and good conscience belong to the plaintiff, and that to recover the same an action for money had and received may be maintained. *Bates-*

*Farley Savings Bank* v. *Dismukes,* 107 *Ga.* 212 (33 S. E. 175) ; *Rhodes Furniture Co.* v. *Jenkins,* 2 *Ga. App.* 475 (58 S. E. 897) ; *Rudisill* v. *Handley,* 9 *Ga. App.* 789 (72 S. E. 189) ; *Smalling's Sons* v. *Dunlap,* 30 *Ga. App.* 162 (117 S. E. 96) ; *Haupt* v. *Horovilz,* 31 *Ga. App.* 203 (120 S. E. 425) ; *Dobbs* v. *Perlman,* 59 *Ga. App.* 770, 774 (2 S. E. 2d, 109). In an action for money had and received it is not necessary to allege a demand for and refusal of payment. *Bank of Oglethorpe* v. *Brooks,* 33 *Ga. App.* 84 (6) (125 S. E. 600) ; *Farmers & Merchants Bank* v. *Bennett,* 120 *Ga.* 1012, 1015 (48 S. E. 398). "No demand shall be necessary to the commencement of an action, except in such cases as the law or the contract prescribes." Code, § 3-106.

The substance of the allegations of counts 2 and 3 is in effect duplication of some of the allegations contained in count 1, and it is not deemed necessary to deal with these two counts inasmuch as it is ruled herein that a cause of action is set out in count 1. The court erred in sustaining the general demurrer as to counts 1 and 4 of the petition.

*Judgment reversed. Stephens, P. J., concurs.*

FELTON, J., dissenting. In my opinion U. S. C. A. title 38, § 551, is a penal statute and gives no right of action which can be enforced in a Georgia court. The courts of one jurisdiction will not enforce the penal laws of another. The Antelope, 10 Wheat. 66, 123 (6 L. ed. 268) ; Loucks *v.* Standard Oil Co., 224 N. Y. 99, 102 (120 N. E. 198). U. S. C. A. title 28, § 371, gives exclusive jurisdiction to the courts of the United States in cases involving crimes and offenses cognizable under the authority of the United States, and penalties and forfeitures incurred under the laws of the United States. § 551 gives no remedy of any sort to an aggrieved person. The sole purpose of the act seems to be to prevent the prohibited acts by prescribing the punishment, or to punish the offender if the prohibited acts are committed. In re Engel's Estate, 250 N. Y. Supp. 648. The mere fact that an act is criminal would not give a civil right of action in Georgia for damages due to a violation of a statute by which injury resulted. Code, § 105-103, however, does give such a right of action, but that section refers to the lawmaking power of Georgia, and does not in my opinion refer to or include that of any other jurisdiction.