### 31258. BASS *v.* CATES.

Decided September 19, 1946. Rehearing denied October 3, 1946.

366

*S. B. Lippitt,* for plaintiff.
*Leonard Farkas, Walter H. Burt,* for defendant.

PARKER, J. (After stating the foregoing facts.) It is a general rule that an action at law can be maintained by one partner against another partner, on a demand growing out of a partnership transaction, where there has been a settlement of the partnership and a balance struck, or where the affairs of the partnership have been so settled that the jury can, without an equitable accounting, ascertain the amount due as the balance owing by one partner to the other under a settlement made by them. *Paulk* v. *Creech, 8 Ga. App.* 738 (5) (70 S. E. 145); *Little* v. *Moore, 55 Ga. App.* 570 (190 S. E. 811). It was alleged by the plaintiff that the partnership, out of which the alleged indebtedness arose, had been dissolved by mutual consent on a named date before the filing of the suit. These allegations with others in the petition were sufficient to bring the case within the rule stated, and the grounds of the demurrers alleging that the suit was not maintainable at law because the indebtedness sued for grew out of a partnership transaction were without merit.

The record does not show why the court sustained the demurrers, or whether they were sustained on only one or more grounds. After carefully considering the petition and the demurrers, it seems to us that a cause of action was alleged in each of the counts, and that it was error to sustain the demurrers for any reason and dismiss the case.

Count one was based on the contract of sale made on January 1, 1942, by the plaintiff to the defendant. Although it stated a definite consideration of $5000 cash and $24,690.60 secured by notes and a bill of sale, it made reference to the original agreement between the parties and recited that "the terms therein contained are hereby specifically made a part of this instrument." The terms expressed in the first agreement, all of which became a part of the final sales contract, included the provision that Cates would pay Bass "the actual book value of the interest purchased as shown by the partnership books." It was alleged that certain notes held by the partnership, with an actual book value of $30,100, in which the plaintiff had a one-half interest, were not included in the audit on which settlement was made, either as notes or in any other item therein, and that the plaintiff had been paid no consideration whatever for his interest in said notes, and that the amount named as the consideration of the bill of sale did not include any sum paid

by the defendant to the plaintiff for the notes. We think it clear that count one alleged with sufficient fullness and definiteness an indebtedness by the defendant to the plaintiff predicated upon the contract of sale.

In *Manry* v. *Hendricks,* 66 *Ga. App.* 442 (18 S. E. 2d, 97); 192 *Ga.* 319 (15 S. E. 2d, 434), an action was brought for an indebtedness growing out of the dissolution of a partnership. It was based on the contract entered into by the parties in consummating the dissolution. The suit was for an amount that the retiring partner owed the partnership at the time of the dissolution, over and above the amount which he claimed to owe, it being alleged that the true indebtedness of such partner to the partnership had been concealed by him and misrepresented to the other partner who purchased his interest. In construing the petition in that case, this court said that, while it contained allegations appropriate to an action for damages for fraud and deceit practiced by the defendant upon the plaintiff, the action was in fact a suit by one person against another, who had formerly been the plaintiff's partner, upon an *indebtedness,* and that the indebtedness was one for which an action would lie by reason of the contract entered into between the parties in consummating the dissolution of the partnership. We think that the principle thus stated in the *Manry* case applies to the case at bar. While no fraud or deception or misrepresentation was alleged against the defendant in the instant case, the petition clearly alleged an error or mistake in the audit, resulting in the plaintiff receiving less than he was entitled to receive, represented by the sum for which the suit was filed. If, as a matter of fact, as alleged in the petition, the book value of the assets of the partnership was $30,100 more than the audit showed, the plaintiff, who was the owner of a one-half interest therein, would be entitled to recover one-half of that amount as a part of the purchase-price for his interest, as contemplated and provided under the dissolution agreement. It matters not how the mistake occurred or who made the error, if, in truth and in fact, there was an error as alleged by the plaintiff.

In *Paulk* v. *Creech,* supra, on page 743, this court said: "Of course, in any case, if the partnership has been closed and the accounting settled, and one partner has been required to pay an item *that was overlooked* [italics ours], he may recover contribution,

where there has been a settlement and a balance struck which is agreed to. The partner in whose favor the balance lies may sue in assumpsit." 7 Am. & Eng. Enc. Law, 361, is cited. Assumpsit may be either express or implied. "*Express assumpsit* is an undertaking made orally, by writing not under seal, or by matter of record, to perform an act or to pay a sum of money to another. *Implied assumpsit* is an undertaking presumed in law to have been made by a party, from his conduct, although he has not made any express promise." Bouvier's Law Dictionary (1914), p. 269.

An action on an implied assumpsit for money had and received may be maintained where the defendant has received money which the plaintiff, in justice and good dealing, is entitled to recover, and which the defendant is not entitled in good conscience to retain. *Dobbs* v. *Perlman*, 59 *Ga. App.* 770 (2 S. E. 2d, 109) ; *Sheehan* v. *Augusta*, 71 *Ga. App.* 233 (30 S. E. 2d, 502). In an action for money had and received, it is not necessary to allege a demand and refusal to pay. *Jasper School District* v. *Gormley*, 57 *Ga. App.* 537, 544 (196 S. E. 232) ; *Morgan* v. *Hutcheson*, 61 *Ga. App.* 763, 772 (7 S. E. 2d, 691). In *Dobbs* v. *Perlman*, supra, it was held that, "In an action for money had and received, because the defendant is in possession of money which was paid the defendant because of a negligent mistake of the plaintiff, a cause of action is made out and a right to recover demanded, unless it appears that the negligence of the plaintiff amounted to a violation of a positive legal duty owing the defendant." That case was a suit by stockbrokers for the difference in the selling price and the actual market value of stock of the defendant sold by them for the defendant. It appeared that day they made a mistake in selling the defendant's stock as stock in a new corporation, when as a matter of fact it was stock in the old corporation, and had a value of only about one-sixth the value of the stock in the new corporation. It was held that the plaintiffs were entitled to recover, although they were negligent and themselves made the mistake which enriched the defendant. If it be conceded that the plaintiff in the case at bar was negligent to a degree, as alleged in the demurrers, this would not bar a recovery, under the ruling in the *Dobbs* case, unless such negligence amounted to the violation of a positive legal duty. We do not think that any negligence properly chargeable to

the plaintiff went that far, and the error or mistake in the audit in this case was not made by the plaintiff. Applying the rule of law announced in the *Dobbs* case to the case at bar, we think that count two of the petition stated a cause of action. "The strictest good faith is required among partners." Code, § 75-201. Although a suit for money had and received is a legal action, it is founded upon the equitable principle that no one ought unjustly to enrich himself at the expense of another, and thus it is a substitute for a suit in equity. *Jasper School District* v. *Gormley*, 184 *Ga.* 756, 758 (193 S. E. 248). Where one partner bought the interest of his copartner in the partnership assets, which seemed larger than they really were, by reason of a mistake in the books, and the mistake was unknown to both partners, and neither was in laches respecting its discovery, and where the purchase of such interest was at a price based on an erroneous set of books, the Supreme Court held "that the consequences of the mistake ought in equity to be corrected, where it could be done without injustice to the selling partner." *Branch* v. *Cooper*, 82 *Ga.* 512 (9 S. E. 1130). That decision "based the correction of such mistake upon natural justice and equity," as was said in *Whittle* v. *Nottingham*, 164 *Ga.* 155, 159 (138 S. E. 62). If, as alleged in count two of the petition, the plaintiff did not receive any consideration for the sale and transfer of his one-half interest in the notes of the partnership, and the defendant collected the money on said notes, the action for money had and received, as alleged in said count, was maintainable. None of the authorities cited by the defendant in error requires a different holding in this case.

The plaintiff stated a cause of action in both counts of the petition, and the court erred in sustaining the demurrers and in dismissing the action.

Pursuant to the act of the General Assembly, approved March 8, 1945, requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment reversed. Sutton, P. J., MacIntyre and Gardner, JJ., concur. Broyles, C. J., and Felton, J., dissent.*

FELTON, J., dissenting. The plaintiff's amendment number one to count one alleged: "Plaintiff alleges that the written records of said partnership consisted of two books and said notes and said re-

tention-title contract executed by Frank Cannon, as aforesaid, all of which were in writing and kept among the records of the partnership, in the safe in the office of said partnership; that when said notes were paid, as hereinbefore alleged, a credit was made in said books of said payment at one hundred cents on the dollar, which was the face value, and actual value, and the actual book value under the system of bookkeeping of said partnership, as hereinbefore alleged. 9. Plaintiff alleges that in accordance with said dissolution agreement, dissolving said partnership, dated December 8, 1941, copy attached to plaintiff's petition, marked Exhibit 'A,' and expressly referred to and made a part of said petition, said plaintiff in compliance therewith did on January 1, 1942, execute to defendant a bill of sale to his interest in said partnership property, expressly including said notes hereinbefore referred to, and expressly referring to the agreement dated December 8, 1941, which was then recorded in the office of the Clerk of the Superior Court of Dougherty County, Georgia, in deed book 89, page 356, and said original agreement was specifically made a part of said bill of sale. A copy of same is attached hereto and marked Exhibit 'C,' and made a part of this petition and paragraph; plaintiff alleging that he, therefore, did comply with said dissolution agreement dissolving said partnership, but that plaintiff was paid no consideration whatsoever, by anyone, for his one-half interest in said notes and said partnership assets, as defendant was obligated to pay plaintiff, under said written dissolution agreement, as hereinbefore alleged. 10. Plaintiff alleges that there was no reason why said notes, a valuable asset of said partnership, were not included in said audit by said auditors employed by said partnership, as aforesaid, and plaintiff did not discover that the same were left out of said partnership audit until the first part of the year 1945, when the United States Government Revenue Department, through one H. M. Keller, demanded from plaintiff approximately $6500, as income tax on said notes, and plaintiff then and there examined carefully said audit and discovered that said notes were not valued at any sum whatsoever, and not included at all in said partnership assets, as they should have been, and thereafter and on or about July, 1945, and prior to the institution of this suit, plaintiff demanded of defendant the payment of one-half of the amount collected by defendant on said notes, owned by said partnership, and defendant refused

and then and there denied that he was indebted to plaintiff in any sum whatsoever, by reason of collection or ownership of said notes. 11. Plaintiff alleges that the consideration mentioned in Exhibit C, hereto attached, in the sum of $24,690.60, was arrived at by a break-down or schedule consisting of items hereto attached as Exhibit D, and expressly made a part hereof; that, in said consideration of $24,690.60, nothing was included or paid to plaintiff by defendant for the Frank Cannon notes, as hereinbefore alleged." Exhibit D is as follows:

| | |
|---|---|
| "985.15 | Auto Cost (1942 Chev. Sedan) |
| 79.35 | Inc. |
| | |
| 1,064.50 | Total Amt. |
| 1,174.22 | Savings |
| 400.00 | Old Due Bills |
| 61.28 | Cash |
| | |
| 2,700.00 | |
| 4,200.00 | Cannon Notes (12 at 350) |
| 340.00 | Cash Jack (Cates, Macon) |
| 450.00 | Apt. Rents |
| 360.00 | Cols. Tables |
| | |
| 7,950.00 | |

| | | | |
|---|---|---|---|
| Net Worths: | 92,684.77 | | |
| Deductions: | 27,403.50 | Apt. | 8,500.00 |
| | 2) 65,281.27 | Ragsdale Phono | 1,240.00 |
| | | Do. Co. Prop. | 17,663.50 |
| | | | 27,403.50 |
| | 32,640.60 | | |
| Cash | 7,950.00 | | |
| | 24,690.60 | | |

Collateral to Amt.
(given by Cates to Bass) to    $33,000.
49 Notes $500 per month
Total    24,500.00
1 note    190.60

24,690.60."

The plaintiff's amendment to count two alleged: The written records of said partnership consisted of two books and said notes

and said retention-title contract executed by Frank Cannon, as aforesaid, all of which were in writing and kept among the records of the partnership, in the safe in the office of said partnership. When said notes were paid, as hereinbefore alleged, a credit was made in said books of said payment at one hundred cents on the dollar, which was the face value, the actual value, and the actual book value under the system of bookkeeping of said partnership, as hereinbefore alleged. This was the only book entry of said notes, and asset of said partnership, as aforesaid. The plaintiff traded with the defendant, wherein the defendant was to pay to the plaintiff the actual book value of the assets of said partnership, and the said auditors left off of said audit (copy attached to plaintiff's petition, as aforesaid) any value for said notes, as hereinbefore alleged, and said notes were not included in any other item in said audit. "12. Plaintiff alleges that in accordance with said dissolution agreement dissolving said partnership, dated December 8, 1941, copy attached to plaintiff's petition, marked Exhibit A, and expressly referred to and made a part of said petition, said plaintiff in compliance therewith did on January 1, 1942, execute to defendant a bill of sale to his interest in said partnership property, expressly including said notes hereinbefore referred to, and expressly referring to the agreement dated December 8, 1941, which was then recorded in the office of the Clerk of the Superior Court of Dougherty County, Georgia, in deed book 89, page 256, and said original agreement was specifically made a part of said bill of sale. A copy of same is hereto attached, marked Exhibit 'C' and made a part of this petition and paragraph; plaintiff alleging that he, therefore, did comply with said dissolution agreement dissolving said partnership, but that plaintiff was paid no consideration whatsoever, by anyone, for his one-half interest in said notes and said partnership asset, as defendant was obligated to pay plaintiff, under said written dissolution agreement, as hereinbefore alleged. 13. Plaintiff alleges that there was no reason why said notes, a valuable asset of said partnership, were not included in said audit by said auditors employed by said partnership, as aforesaid, and plaintiff did not discover that the same were left out of said partnership audit until the first part of the year 1945, when the United States Government Revenue Department, through one H. M. Keller, demanded from plaintiff approximately $6500 as income tax on said notes, and

plaintiff then and there examined carefully said audit and discovered that said notes were not valued at any sum whatsoever, and not included at all in said partnership assets, as they should have been, and thereafter and on or about July, 1945, and prior to the institution of this suit, plaintiff demanded of defendant the payment of one-half of the amount collected by defendant on said notes, owned by said partnership, and defendant refused and then and there denied that he was indebted to plaintiff in any sum whatever, by reason of collection or ownership of said notes. 14. Plaintiff alleges that the consideration mentioned in Exhibit C, hereto attached, in the sum of $24,690.60, was arrived at by a break-down or schedule consisting of items hereto as Exhibit D, and expressly made a part hereof. That [in] the said consideration of $24,690.60 nothing was included or paid to plaintiff by defendant for the Frank Cannon notes, as hereinbefore alleged." The bill of sale, dated January 1, 1942, from Gene Bass to R. R. Cates, contained the following provisions with certain exceptions not here material: "That whereas said parties entered into a memoranda agreement on the 8th day of December, 1941, which agreement is in writing and recorded in the office of the Clerk of the Superior Court of Dougherty County, Georgia, in deed book 89, page 256, and reference to same is hereby made and the terms therein contained are specifically made a part of this instrument; now, therefore, the said party of the first part for and in consideration of the sum of five thousand dollars cash, in hand paid, and the sum of $24,690.60 secured by notes and a certain bill of sale to secure debt, the receipt of all of which is hereby acknowledged, has bargained and sold, and does hereby bargain, sell, transfer, assign, convey, and deliver unto said party of the second part all of his right, title, equity, and interest in and to the partnership business and partnership assets heretofore conducted under the name and style of Albany Amusement Company, including the trade name of 'Albany Amusement Company,' the good will of said business, and all of the personal property and chattels belonging to said business, including real-estate leases, notes, accounts, mortgages, or other forms of indebtedness which are payable to the Albany Amusement Company." The following language was substituted for paragraph 8 of count 1 as amended, and for paragraph 11 of count 2 as amended, and the language of those two paragraphs of the two counts as first amended

was stricken: "Plaintiff alleges that the written records of said partnership consisted of two books and said notes and said retention-title contract executed by Frank Cannon, as aforesaid, all of which were in writing and kept among the records of the partnership, in the safe in the office of said partnership. Plaintiff alleges that this was the only book entry of said notes, and asset of said partnership, as aforesaid; that plaintiff traded with defendant, wherein defendant was to pay to plaintiff the actual book value of the assets of said partnership, and the said auditors left off of said audit, copy attached to plaintiff's petition, as aforesaid, any value for said notes as hereinbefore alleged, and said notes were not included in any other item in said audit." The defendant renewed his original demurrers, and after the amendments to the petition were filed the defendant filed the following demurrers: "4. It further appears by said final contract that all notes (including the Frank Cannon notes) were included in the sale for the consideration paid and to be paid over a period of approximately four years time, and thus the plaintiff can not now successfully contend that the said consideration paid and to be paid did not include the notes. . . 6. It further appears that the agreement for settlement on the basis of book value as shown by the books meant the value disclosed by the statement of the audit revealing the money measure of the assets and liabilities on the company's books, and this statement and audit had been furnished, and thus plaintiff cannot go outside of his said written agreement (in the absence of the allegation of fraud, accident, or mistake) that said book value as shown by the books, and verified by the auditors, should not determine and measure the amount to be paid plaintiff for his interest in said partnership. 7. It does not appear but that plaintiff had full knowledge of all the facts and details as to the handling of the Frank Cannon transaction on June 1, 1941, and for the seven-months' period thereafter, during which notes were paid and credited, and how and to what the same were credited; and the plaintiff having alleged that the partnership held the legal title to all the machines, trucks, and equipment sold said Cannon, that the same were carried on the books of the company as physical property and as equipment at a certain valuation, and not marked or charged off as sales until payments on the Frank Cannon notes were received, and thus plaintiff, in the absence of allegations of ignorance

or imposition, concealment, or deception, must be charged with knowledge of the foregoing, and his pleading is evasive in its failure to allege the complete method of bookkeeping as to said transaction. The allegation in plaintiff's petition that said notes had a book value, or that the same were not included in the audit is vague, indefinite, and uncertain, and evasive, and a naked conclusion, without stating the facts as to the system of bookkeeping with reference to said matter. . . 10. Defendant further demurs to the Exhibit 'D' attached to the amendments and the items therein: Apartment $8,500, Do. Co. Property $17,633.50, total $26,163.50, as being vague, indefinite, and uncertain in its failure to show that the same follows the audit or was taken from the audit; it affirmatively appearing that the plaintiff in the final consideration of his deal considered values and settled on values, and allocation of values different from said audit. 11. It plainly appears that both parties plaintiff and defendant have construed the contract as giving the defendant title to all of said Frank Cannon notes, and that all equity in said notes was sold by the plaintiff to defendant; it appearing from plaintiff's exhibit that he took back some of said notes in part payment from defendant, as a part of the purchase-price, and defendant having thus construed said contract, and this known to plaintiff, plaintiff can not assert after the lapse of approximately four years time, a different construction."

In the original petition it was alleged that the unmatured Cannon notes had an actual book value on the books of Albany Amusement Company. In the first amendment to count two, the plaintiff alleged that, *when the notes were paid, a credit was made in the books at one hundred cents on the dollar which was the actual book value under the system of bookkeeping of the partnership, and that such credit was the only book entry of the notes and asset of the partnership.* The court, however, allowed the plaintiff to amend a second time, and the plaintiff struck this allegation from his petition. I think, therefore, that the defendant's demurrer calling for information as to the manner in which the Cannon-notes transaction was handled on the books of the partnership should have been sustained, as to both counts. Presumably the assets which were sold to Cannon were recorded on the books of the company before the sale of the assets represented by the notes and, in the absence of allegations that *the assets represented by the Cannon notes* were

not registered on the books and in the audit, no cause of action is stated. If they were recorded on the books, the books showed the value in accordance with the company's method of keeping books,· and the same is presumptively true of the audit. In the absence of allegations that the assets represented by the Cannon notes were not included in the books and the audit, and some good reason why the plaintiff did not know of such facts, neither count set forth a cause of action.

There is still another reason why no cause of action is alleged in either count. The dissolution contract was consummated by a bill of sale. This bill of sale stated that for a stated consideration the seller's interest in and to the assets of the partnership were conveyed, and notes and other evidence of indebtedness of the partnership were expressly included. The counts of the petition allege that the Cannon notes were the only notes among the assets. Therefore a one-half interest in these notes conveyed by the bill of sale was conveyed to the buyer. In the absence of fraud, duress, mutual mistake, or mistake of the seller known to the other party (and the citations of the majority do not fit this case, for in those cases fraud was alleged), the terms of the bill of sale can not be altered or contradicted. Furthermore, the seller took as part payment for his one-half interest twelve of the Frank Cannon notes, and when he did so he took them as the property of the buyer, since the buyer owned the whole interest in the notes by reason of the contemporaneous bill of sale. Under such circumstances, the seller must have known of the existence of the Cannon notes and must have known that he was selling the entire series, and in the absence of fraud, duress, or excusable mistake he is bound by the terms of the bill of sale, which was executed subsequently to the dissolution agreement and as a consummation thereof. Before such an action would lie, as is now attempted, I think that the bill of sale would have to be reformed.