## 59526. DAWES MINING COMPANY v. CALLAHAN.

QUILLIAN, Presiding Judge.

This is a suit for damages by an employee against an employer for breach of an agreement to provide health insurance.

The evidence shows that appellee Callahan was first employed by appellant Dawes Mining Co. in 1957 as an hourly wage earner. A few years later Callahan started participating in Dawes' group health insurance program. The insurance paid for medical and hospital expenses incurred by Callahan and his dependants, with half the premiums paid for by Callahan by deductions from his pay and the other half by Dawes. Dawes processed employee claims under the policy to the insurer. In 1975, without consulting the employees, Dawes changed coverage from the existing insurer to another insurance company. The employees were told of the change and to come to the office to sign up with the new insurer. The local representative of Dawes and a representative of the new insurer

were present in the office. The insurer's representative said the coverage was the same as under the former policy and said nothing about exclusion of coverage for pre-existing illnesses. Callahan, who could not read but could sign his name, signed an application for insurance as directed by the insurer's representative. Some weeks later he received an insurance card as evidence of the insurance. Unknown to Callahan at the time the new insurance master policy had a provision which prohibited payment of medical expenses incurred as a result of pre-existing illnesses until the policy had been in effect a certain period of time. Within that excluded period, Callahan's wife was hospitalized for a pre-existing illness and, after six months and several hospitalizations, died. After mistakenly paying some of the expenses and demanding repayment, the new insurer invoked the pre-existing illness exclusion and refused payment of any of the medical and hospital expenses, which were in excess of $14,000. Having no recourse against the insurer, Callahan brought this suit against Dawes for breach of an agreement, incident to his employment, to provide health insurance coverage. The jury returned a verdict for Callahan for an amount equal to the medical and hospital expenses owed, Dawes' motions for judgment notwithstanding the verdict and new trial were denied, and Dawes appeals. *Held:*

1. Dawes claims that the verdict and judgment are not supported by law or evidence because there is no evidence that Dawes agreed to pay any medical or hospital expenses. This argument does not address the issue, which is whether Dawes was liable for damages because Dawes did not maintain insurance coverage which would have paid the expenses.

Did Dawes have any obligation to Callahan concerning a possible lapse in coverage when the insurers were changed? This appears to be a question of first impression in Georgia. A body of law has developed in other jurisdictions which says that if an employee contributes in paying the premium on group insurance carried by the employer, the employer has an obligation to attend to the policy and inform the employee of anything required to keep the insurance in effect. Neider v. Continental Assur. Co., 213 La. 621 (35 S2d 237); McGinnis v. Bankers Life Co., 39 A. D. 2d 393 (334 NYS2d 270); Van Ostrand v. Nat. Life Assur. Co., 371 NYS2d 51 (82 Misc. 2d, 829); 1 Appleman, Insurance Law & Practice, § 43; 44 AmJur 2d § 1878.

"Group insurance is a comparatively new form of insurance, and each problem presented to this court concerning it should be approached with the purpose of giving to it every legitimate opportunity of becoming a social agency of real consequence. It has

been pointed out that the purpose of this form of insurance is to provide the employer with a means of procuring insurance protection for his employees and their families at the lowest possible cost, and that the employer's making this form of insurance available to his employees results in the creation of good will between the employer and employee, enables the employees to carry a larger amount of insurance than they could otherwise, and helps to attract and hold a permanent class of employees. [Cit.] These results could be defeated if the employer, by poor administration of the insurance, could be instrumental in causing the insurance to become unavailable to the employee. We feel that the employer owes to the employee the duty of good faith and due care in attending to the policy, and that the employer should make clear to the employee anything required of him to keep the policy in effect..." Neider v. Continental Assur. Co., 213 La. 621, 631, supra.

"Group insurance is concerned with the rights of a definite insured — the employer — and employees who are 'in the position of third party beneficiaries,' . . . 1 Appleman, Insurance Law & Practice, § 45, p. 66, § 41, p. 52. Normally the employer is neither an insurer nor a guarantor of payment. This does not mean, however, that the employer may not have a liability imposed upon him either by reason of his actions or by reason of his failure to act, if the employee has been adversely affected thereby.' Id. § 43, p. 57. He may, for example, be liable for failure to perform a contractual obligation to furnish group insurance . . . Id., § 43, pp. 57-58." Shannon v. United States, 417 F2d 256, 259 (5th Cir. 1969).

"We do not hold that an employer-policyholder has no right to terminate or modify a group health and accident policy it has purchased for its employees. [Cits.] We hold that an employer policyholder of a group health and accident policy is obligated to inform the insured employee of the termination or modification of benefits under the policy." Greer v. Continental Casualty Co., 347 S2d 70, 72 (La. App. 1977).

This suit was tried as a breach of contract. Since there was no express agreement, the only theory on which a contract may be found is that of an agreement implied in fact. Implied contracts are recognized in Georgia. *Bass v. Cates,* 74 Ga. App. 363 (39 SE2d 550); *Dukes v. Rogers,* 67 Ga. App. 661 (21 SE2d 295); *Pharr Road Investment Co. v. Sasser & Co.,* 133 Ga. App. 772 (212 SE2d 857).

"Contracts implied in fact are inferred from the facts and circumstances of the case, and are not formally or explicitly stated in words. It is often said that the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, whether oral or written,

while in the latter their agreement is arrived at by a consideration of their acts and conduct, and that in both of these cases there is, in fact, a contract existing between the parties, the only difference being in the character of evidence necessary to establish it. In other words, in an express contract all the terms and conditions are expressed between the parties, while in an implied contract some one or more of the terms and conditions are implied from the conduct of the parties." 17 AmJur2d 334, 335, Contracts, § 3.

Here the evidence is undisputed that Callahan participated in the group health insurance policy provided by Dawes for employees from a few years after he entered Dawes' employment in 1957. Through the years he paid his share of the premiums and utilized the insurance to pay for medical and hospital expenses to include those for his wife's illnesses. In 1975 Dawes changed health insurers and, with the new insurer's representative saying in the presence of Dawes' representative that the coverage would remain the same as under the former policy, Callahan, who was illiterate, signed up for the new insurance. After the new policy was in effect, Callahan's wife's eventually refused medical and hospital bills were administratively processed by Dawes to the new insurer for payment. Dawes' current resident manager admitted in testimony that Dawes had an interest in trying to secure insurance coverage and maximum benefits for its employees. It also was stipulated that the reason for the change in insurance carriers was that it would benefit the employees' coverage as well as the value of Dawes' contribution as a company fringe benefit.

We find such evidence sufficient to authorize the jury to find as a matter of fact that when the change of insurers occurred, Dawes impliedly agreed to continue the coverage that existed and that the agreement was breached when the new insurer failed to cover the expenses caused by Mrs. Callahan's pre-existing illnesses. "In the case sub judice the jury found an implied contract . . . [T]here is some evidence to support that finding and, hence, there is no merit to appellant's enumerations of error (denial of motions for judgment notwithstanding the verdict and for a new trial)." *Pharr Road Investment Co. v. Sasser & Co.,* 133 Ga. App. 772 (2), supra.

2. There is no merit to the claim that Callahan received double recovery because the new insurer paid part of the amount covered by the verdict. The payment was mistakenly made, repayment was demanded under threat of suit, and Callahan is still obligated for the amount paid.

3. The trial court did not err in admitting evidence of Callahan's wages as an employee, in permitting his counsel to argue therefrom that his financial condition was limited, or in

denying motions for mistrial because of the arguments. The evidence was not objected to when admitted and was relevant to the terms of Callahan's employment. " 'It is the province of counsel to comment upon facts in evidence, and to draw deductions therefrom in such manner as to present the case for the side he represents in its light most favorable to his case, and this right should not be unduly infringed, so long as counsel does not attempt to introduce into his argument facts not supported by evidence. [Cits.]' " *Locklear v. Morgan,* 129 Ga. App. 763, 765 (201 SE2d 163).

" 'The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. [Cits.] Unless it is apparent that a mistrial is essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with. [Cit.]' " *Firestone Tire Co. v. King,* 145 Ga. App. 840, 843 (244 SE2d 905). We find no abuse of discretion here.

4. Appellant's contention that the action for the medical and hospital expenses should have been in Mrs. Callahan's administrator is without merit. At the time the expenses were incurred, Code Ann. § 53-510 applied, making the husband responsible for the necessary expenses of the wife. Prior to trial, this statute was repealed with the repealing act making clear that the intent of the General Assembly was that no contract made prior to the effective date of the repeal should be disturbed. Ga. L. 1979, pp. 466, 469, effective April 4, 1979.

5. The final enumeration complains of the failure of the trial court to give requested charges. Most of the requests were not relevant to the issues in the case and the remainder were substantially covered by the charge as given. There is no merit to this enumeration.

*Judgment affirmed. Shulman and Carley, JJ., concur.*

SUBMITTED MARCH 3, 1980 — DECIDED MARCH 20, 1980 — REHEARING DENIED APRIL 3, 1980 —

*Steven E. Scheer,* for appellant.
*Kenneth S. McBurnett, Charles H. Brown,* for appellee.