## 27158. DOBBS *et al. v.* PERLMAN.

DECIDED FEBRUARY 21, 1939. REHEARING DENIED MARCH 29, 1939.

*Kelley & Dickerson, Harold Hirsch, Marion Smith, A. S. Clay, Hamilton Lokey,* for plaintiffs.

*Gibson & Wood, Guy Smith, Heath & Heath,* for defendant.

GUERRY, J. The facts as shown by the pleadings and undisputed evidence are these: Sam Perlman, the defendant, was the owner of 100 shares of the capital stock of Fox Film Corporation, known as class A stock, evidenced by a certificate registered in 1932. The defendant, desiring to sell this stock, placed it in the hands of G. C. Stewart, a broker and securities dealer in Valdosta, Georgia, to be sold. Stewart, being unfamiliar with the market price of this stock, on October 25 wired Dobbs & Company, who are stock brokers and members of the New York Stock Exchange and who maintain offices in Atlanta and New York, as follows: "Wire bid price for one hundred Fox Film class A common original advise trend market." Dobbs & Company replied that the price was 16-7/8 per share. On the same date Stewart sent to Dobbs & Company by air-mail a letter, enclosing the stock indorsed for sale and said: "Your Atlanta office quoted this stock to-day, bid 16-7/8. As this is original stock, there having been

some exchange proposition presented to stockholders since this stock was purchased, I am sending it to you for the purpose of inspection, and to be sure that the above bid applies on this particular stock, and that if it be sold, that we are selling the stock on which the bid is made. Am forwarding the stock to you by air-mail and will very much appreciate your wiring me to-morrow, either through your Atlanta office, or direct, the bid on stock Saturday morning and upon receipt of same my client will then decide whether he decides to sell on the bid price. If the bid is around seventeen and I receive your wire in time to sell the stock Saturday morning, I think it is the intention of my client to sell. Awaiting your telegraphic advice Saturday morning. . ." On Saturday morning Dobbs & Company wired Stewart, "Can probably get 17-1/2 for Fox A stock if quick answer." Stewart replied by wire: "Sell hundred shares Fox Film class A at seventeen or better wire extension." Dobbs & Company replied by wire: "Sold one hundred Fox Film class A at seventeen and three-eighths extension one thousand seven hundred and seventeen dollars and ninety-six cents." On Monday following October 28 Stewart drew a draft on Dobbs & Company for $1717.96 which draft was paid, and Stewart paid Perlman $1709, the amount of the draft less his commission.

When Dobbs & Company made delivery of the stock to Birnbaum & Company, the purchasers, it developed that the purchasers had bid on the stock which was quoted on the New York Stock Exchange, which was known as Twentieth Century Fox Film Corporation stock. It appeared that in 1933, after the issuance of the stock owned by Perlman, there had occurred a reorganization of Fox Film Corporation; that at the time it had outstanding class A common stock and class B common stock; that as a result of that reorganization the holders of class A stock became entitled to receive one share of class A new common stock for each six shares of class A old common stock formerly held; that in 1935 Fox Film Corporation acquired all the assets of Twentieth Century Pictures and again reorganized its capital structure, and pursuant to such reorganization and merger Fox Film Corporation changed its name to Twentieth Century Fox Film Corporation, and its capital stock was reclassified into preferred and common stock so that holders of class A common stock new, received one half of a share of the

preferred stock and one fourth of a share of the common stock for each share of said class A common stock new, and one share of preferred stock and one half share of common stock (new) for each share of class B common stock, new; that the value of the stock owned by Perlman, which was known as Fox Film (old) was only about one sixth the value of the Fox Film stock (new), the exact figures being given in the evidence; that the old Fox Film stock was not quoted on the New York Stock Exchange, but that the new was, and plaintiffs did not know of the distinction and quoted the price bid, which was on the new stock, rather than on the old which the defendant owned; that Birnbaum & Company bought the stock quoted on the exchange, and Dobbs & Company had to deliver this stock; that they bought it at the price quoted and have suffered a loss thereby in the amount of the difference between the actual market value of the stock owned by Perlman and the money paid because of their mistake in selling Perlman's stock as stock in the new Fox Film Corporation.

They brought their action for money had and received. They alleged that through their mistake the defendant is in possession of money which in equity and good conscience he is not entitled to retain. They offered to repay or reimburse the defendant for any expense which he has incurred as a result of the transaction, and to do anything required in equity. They alleged that they can not return the stock for the reason that when Birnbaum delivered the stock to the transfer agent of Fox Film Company the old stock was canceled and its equivalent in new stock was issued in place thereof.

It is clear to our minds that the plaintiffs were not purchasing the stock for themselves but were acting as selling agents for the defendant. It is also clear that they were not placing a value on the stock at which they would buy, but were quoting what they thought was the market price of the stock. They were negligent, for their especial attention was called to the fact that the particular stock certificate sent them was the stock the seller had to sell and not another kind of stock. They made a mistake, and are liable for any injury or damage which may flow from such negligent action on their part. Any expense caused defendant, any loss occurring because of such conduct, should be borne by them. On the other hand, should the defendant be allowed to retain money

paid him because of a mistake of fact, not of judgment or opinion, whereby he received that to which he was not entitled? The evidence shows without contradiction that defendant has in his possession money, the difference between the actual market value and the price paid under a mistaken impression, for which he gave nothing of adequate value in return. He did not sell his stock to a purchaser at an appraised value placed on it by the purchaser; he sold it at a market price, which the plaintiffs did not fix. The plaintiffs made a mistake, negligent to a degree, but, a mistake which has enriched the defendant. A defendant however, under such circumstances, would not be required to repay money paid under a mistake of fact made by the plaintiffs where such payment has caused a change in the position of the payee who received the money in good faith, and where it would be unjust for him to be required to refund. L. R. A. 1917E, 344 and cases cited.

While our Code, § 37-211, provides, "If a party, by reasonable diligence, could have had knowledge of the truth, equity shall not relieve; nor shall the ignorance of a fact, known to the opposite party, justify an interference, if there has been no misplaced confidence, nor misrepresentation, nor other fraudulent act," it is also said in the following section (37-212), that "The negligence of the complaining party, preventing relief in equity, is that want of reasonable prudence, the absence of which would be a violation of legal duty. Relief may be granted even in cases of negligence by the complainant, if it appears that the other party has not been prejudiced thereby." This section is codified from the opinion of Judge Bleckley in *Werner* v. *Rawson,* 89 *Ga.* 619, 629 (15 S. E. 813), where he said: "The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." In *Green* v. *Johnson,* 153 *Ga.* 738 (5) (113 S. E. 402), Judge Hines said: "Reformation may be granted even in cases of negligence by the party complaining, if it appear that the other party has not been prejudiced thereby." In Appleton Bank *v.* McGilvray, 4 Gray (Mass.), 518 (64 Am. D. 92), it was said: "It is no answer to plaintiff's claim, that the mistake arose from the negligence of the plaintiffs. The ground upon

which the rule rests is, that money paid, through misapprehension of facts, in equity and good conscience belongs to the party who paid it; and can not be justly retained by the party receiving it."

The rule in Georgia is well established. It follows the principle laid down in the leading case of Moses v. McFarland, 2 Burrow, 1005, where Lord Mansfield said: "If the defendant be under an obligation from the ties of natural justice to refund, the law implies a debt and gives this action founded in the equity of the plaintiff's case, as if it were upon a contract." Judge Nisbet, in Culbreath v. Culbreath, 7 Ga. 64 (50 Am. D. 375), used this language: "If authorities were balanced—we feel justified in kicking the beam, and ruling according to that naked and changeless equity which forbids that one man should retain the money of his neighbor, for which he paid nothing, and for which his neighbor received nothing; an equity which is natural—which savages understand—which cultivated reason approves, and which Christianity not only sanctions, but in a thousand forms has ordained." This court in Citizens Bank of Fitzgerald v. Rudisill, 4 Ga. App. 37 (60 S. E. 818), said: "An action for money had and received lies, in case the defendant has taken to his use money which ex æquo et bono belongs to the plaintiff. It needs for its support no actual contractual relation, for the law will imply a quasi-contractual relation to uphold it, whenever the circumstances so require." See also Whitehead v. Peck, 1 Ga. 140; Bell v. Hobbs, Ga. Dec. Part 2, 144; O'Neal v. Deese, 23 Ga. 477; Rudisill v. Handley, 9 Ga. App. 789 (72 S. E. 189); Haupt v. Horovitz, 31 Ga. App. 203 (120 S. E. 425). Code, §§ 37-207, 37-210, 37-211, 37-217, 96-210, cited by counsel for defendant in error do not require any review or overruling of the Rudisill case, supra, or others similar thereto. The plaintiffs' right is determined by the rules of equity, which are themselves rules of natural justice which arose ex æquo et bono of plaintiffs' demand. If the plaintiffs' action did not amount to a violation of a "positive legal duty" Code, § 37-212, applies. The plaintiffs are liable to the defendant for any injury suffered because they negligently quoted him the wrong market price of stock he had for sale, and paid him such price under a mistaken impression as to its value. If the defendant has suffered no injury, because this money was paid to him through a mistake, the plaintiffs have violated no positive legal duty which they owe to him. This

is the statutory rule in equity; this is the common-law rule applied by the courts of this State to actions for money had and received. We think the undisputed evidence in this case shows that the plaintiffs made a mistake as to the market value of the Fox Film class A stock which was sent to them for inspection; that they quoted to the defendant new Fox Film stock, and sold to Birnbaum & Company new or Twentieth Century Fox Film stock; that in ignorance of their mistake they sent their check therefor to the defendant and it was paid; that on November 1 they discovered their mistake and promptly made demand of defendant for a return of the difference between the actual market value of the defendant's stock, and the price paid him through mistake. They also offered to reimburse the defendant for any costs or other injuries he may have sustained. Because of their own mistake, the plaintiffs have paid to the defendant a sum greater than the market value of the defendant's stock. The plaintiffs were not buying the stock for themselves, or at a value fixed by themselves, but were selling it on the market at the then market value. The mistake did not arise out of an ordinary transaction of bargain and sale where the parties deal at arm's length.

It is also insisted, in view of the evidence, that the plaintiffs had allowed the stock sent them to be taken up and canceled; that it became impossible for the parties to be placed in statu quo, and for that reason it would be inequitable to compel the defendant to repay the money. If this were the legal effect of the transaction, we would agree thereto. The uncontradicted evidence discloses that the stock which the defendant held was in Fox Film Corporation, which was itself reorganized in 1933, and that prior to the sale this corporation had been merged into Twentieth Century Fox Film Corporation, and that the only right the owner or holder of such stock had was to have stock in the new corporation issued to him in the place of the stock held in the old corporation. The basis of exchange of these stocks was disclosed by undisputed evidence. That being true, the defendant may be placed in statu quo either by a return of his old stock or its equivalent in the stock of the new corporation with which the other company was merged. This stock, in law, may be declared to be a fungible. Webster defines a fungible as "interchangeable, capable of mutual substitution." In Rogers v. Thompson, 215 N. Y. App. 541, it is said: "They are

unlike distinct articles of personal property which differ in kind and value, such as a horse, wagon or harness. The stock has no earmark which distinguishes one share from another so as to give it any additional value or importance; like grain of uniform quality, one bushel is of the same kind and value as another." In Restatement of the Law of Restitution, 264, § 66, it is said: "If specific restoration became impossible before the party seeking restitution knew the facts and had an opportunity to act thereon, restitution is granted upon the payment of value or the imposition of conditions if justice can not otherwise be done, except that where chattels other than fungibles were received restitution will not be granted unless substantially all of that which has been received can be returned in as good condition as when received. . . A person who has received money or fungible things and who is required to make restoration as a condition to restitution is entitled to substitute a like amount of such money or things in place of those which he had received." In illustrating what fungibles are, it is said (page 271), that "grain of a recognized kind and quality, shares of a corporation," are examples. We think the offer to return shares of stock which are the equivalent of the stock sent them is a sufficient restoration by the plaintiffs to entitle them to demand restitution.

We think the undisputed evidence in this case demands a finding that the plaintiffs paid the defendant for the supposed value of Fox Film Stock in the new or reorganized corporation which had a value of approximately six times that of the stock owned by defendant. That this negligent mistake by the plaintiffs caused the defendant to be in possession of money of the plaintiffs for which he gave nothing of value in return. If the defendant has suffered any injury by reason of such payment to him, or has placed himself in a position in which he would not otherwise have been, which has resulted in his injury and damage, the plaintiffs by their negligence are precluded thereby from their action. If the defendant has sustained such injury as a result of the plaintiffs' negligence and mistake, the plaintiffs have violated a positive legal duty owing the defendant and can not recover or rescind. If, at the time plaintiffs notified defendant of the mistake and made demand for the return of the money, no injury or damage had occurred, and this was not made an issue by any evidence introduced, the plaintiffs

had violated no positive duty owing defendant and have an equitable claim which our courts have said might be maintained by an action for money had and received. We think the verdict rendered by the jury was without evidence to support it, and the court erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*