### 33146. REID et al. v. HEMPHILL, executrix.
### 33147. BRANTLEY PRODUCTS CO. et al. v. HEMPHILL, executrix.

DECIDED SEPTEMBER 14, 1950.

*J. Ralph McClelland Jr., John L. Westmoreland, John L. Westmoreland Jr., Charles W. Bergman,* for plaintiffs in error. *David Gershon,* contra.

SUTTON, C. J.   The two cases before this court arose out of a single action in Fulton Superior Court by Mrs. S. W. (Mary) Hemphill, as executrix of the estate of S. W. Hemphill, against J. A. Reid, H. H. Brantley, Brantley Products Company, and American Tire Company, to recover $7500 paid by S. W. Hemphill to Reid, as agent for the American Tire Company, as a deposit on the purchase of Brantley Products Company, a wholly owned subsidiary of the American Tire Company, the money having subsequently been disbursed by Reid at the direction of the American Tire Company.   Case No. 33146 involves an exception to the overruling of the demurrers of Reid to the petition, both general and special; and case No. 33147 involves an exception to the overruling of the demurrers of Brantley, Brantley Products Company, and American Tire Company, to the petition, both general and special, with the exception of one ground of special demurrer, which was sustained.   The overruled grounds of demurrer are substantially the same in each instance.   The cases went to the Supreme Court and were transferred by that court to this court.

The following facts, in substance, are alleged in the petition: Sometime prior to July 3, 1948, S. W. Hemphill entered into negotiations with American Tire Company, through its duly authorized agent, J. A. Reid, for the purchase of the entire capital stock of Brantley Products Company, a wholly owned subsidiary of American Tire Company. H. H. Brantley managed and controlled both corporations, although the ownership of stock of American Tire Company was divided among others in his family. On July 3, 1948, the negotiations had proceeded so favorably that Hemphill paid Reid $7500 to be used as a part payment on the purchase of the stock of Brantley Products Company. He also agreed orally to pay $15,000 plus the value of the inventory owned by Brantley Products Company for the purchase of the capital stock of this business, the inventory to be taken and its value fixed by him, with Reid and Brantley, on or about July 13, 1948. The $7500 paid Reid was disbursed by Reid at the direction of American Tire Company, $5000 being paid into the treasury of American Tire Company and $2500 being paid into the treasury of Brantley Products Company, for the benefit of American Tire Company. All of the defendants knew that the money belonged to Hemphill, and of the purpose for which it was given to Reid. Under the terms of the oral agreement $7500 additional in cash was to be paid by Hemphill upon the execution of a written contract, on or about July 13, 1948, and the balance of the purchase-price would be paid by Hemphill on an installment basis, the amount of such installments, time of payment, and rate of interest to be agreed upon between Hemphill and American Tire Company on or about July 13, 1948, when the inventory would be taken and a formal agreement executed. Between July 3, 1948, and July 13, 1948, Hemphill became critically ill, and from that time until August 14, 1948, when he died, he was too ill to complete the transaction. The plaintiff, as the agent of Hemphill, who was her husband, notified the defendants of his illness and the imminence of his death, and of the impossibility of his going forward with buying the capital stock of Brantley Products Company, and demanded the return of the $7500. After his death, as executrix of his estate, she again demanded a return of the $7500. Neither the plaintiff nor her testator received any-

thing of value from any of the defendants for the money. A portion of the $2500 received by Brantley Products Company was subsequently paid to Reid, the amount being unknown to the plaintiff. American Tire Company, upon learning that Hemphill would not complete the transaction, sold a portion of the stock of Brantley Products Company to Reid. Thereafter Brantley acquired this stock, and Brantley and American Tire Company have divided among themselves, on a basis unknown to the plaintiff, all of the assets of Brantley Products Company, and although the corporate existence of Brantley Products Company is still maintained, it is insolvent. Reid, Brantley, Brantley Products Company, and American Tire Company divided among themselves, in proportions unknown to the plaintiff, the $7500 which the plaintiff's testator deposited toward the purchase of Brantley Products Company, and have failed and refused to return the same to the plaintiff. Recovery was sought against each defendant for such part of the $7500 as the court should determine each owed the plaintiff, with interest thereon from the date of the demand.

■ "A contract is an agreement between two or more parties for the doing or not doing of some specified thing." Code, § 20-101. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate." § 20-107. "Three elements are essential to a contract of sale: 1. An identification of the thing sold. 2. An agreement as to the price to be paid. 3. Consent of the parties." § 96-101. "Because of indefiniteness and uncertainty in the terms of payment, no binding contract was made in a written agreement for the purchase of property to be paid for as follows: '$2,000 cash and the balance of $1,300 in monthly payments,' the amounts, the number, or the times of the monthly payments not being indicated therein." *Lightfoot* v. *King*, 25 *Ga. App.* 80 (102 S. E. 468). Also, see *Chatham Motor Co. Inc.* v. *DeSosa*, 48 *Ga. App.* 257 (172 S. E. 604); *Elberton Hardware Co.* v. *Hawes*, 122 *Ga.* 858 (50 S. E. 964); *Atlanta Buggy Co.* v. *Hess Spring & Axle Co.*, 124 *Ga.* 338 (52 S. E. 613, 4 L.R.A. (N.S.) 431). In the petition in the present case it is alleged "That as agreed in said oral negotiations, the balance of the

purchase-price of said stock, above the $15,000 cash, was to be paid by Hemphill on an installment basis, with the amounts of such installments, as well as the time of their payment and the interest rate thereon, to be agreed upon between Hemphill and American Tire Company on or about July 13, 1948, when the inventory was to be taken and the formal contract entered into between them." The petition further shows that this was never done, on account of the illness and death of Hemphill. Under the law applicable thereto these facts show that no enforceable agreement was ever reached between Hemphill and the American Tire Company for the purchase of the capital stock of its wholly owned subsidiary, Brantley Products Company.

■ There being no enforceable contract for the purchase of Brantley Products Company by Hemphill, was the American Tire Company entitled to retain the $7500 deposited with its agent, Reid, and distributed by Reid according to directions from the American Tire Company, a portion of the same being eventually received by all of the defendants, with knowledge that it was a deposit by Hemphill for the purchase of Brantley Products Company, or should the money be returned to the executrix of the estate of Hemphill? In ruling on the question of its jurisdiction in *Brantley Products Company* v. *Hemphill*, 206 *Ga.* 854 (59 S. E. 2d, 367), the Supreme Court said: "No equitable relief is prayed, for none is necessary, since it is not alleged that American Tire Company, the only party with which the deceased, Hemphill, is alleged to have had any contractual relations, is insolvent. 'While the action for money had and received is often referred to as an "equitable action" [citations omitted], it is nevertheless an action at law. [Citing.]' Properly construed, the action in the instant case is one for money had and received only, and under the decisions above cited, is one at law. Accordingly, the Court of Appeals and not this court has jurisdiction." That court also held that the companion case was controlled by the same ruling. See *Reid* v. *Hemphill*, 206 *Ga.* 855 (59 S. E. 2d, 368). As to an action for money had and received the rule in Georgia is well established. "It follows the principle laid down in the leading case of Moses v. McFarland, 2 Burrow, 1005, where Lord Mansfield said: 'If the defendant be under an obligation from the ties of natural justice

to refund, the law implies a debt and gives this action founded in the equity of the plaintiff's case, as if it were upon a contract.' Judge Nisbet, in *Culbreath* v. *Culbreath,* 7 *Ga.* 64 (50 Am. D. 375), used this language: 'If authorities were balanced —we feel justified in kicking the beam, and ruling according to that naked and changeless equity which forbids that one man should retain the money of his neighbor, for which he paid nothing, and for which his neighbor received nothing; an equity which is natural—which savages understand—which cultivated reason approves, and which Christianity not only sanctions, but in a thousand forms has ordained.' This court in *Citizens Bank of Fitzgerald* v. *Rudisill,* 4 *Ga. App.* 37 (60 S. E. 818), said: 'An action for money had and received lies, in case the defendant has taken to his use money which ex aequo et bono belongs to the plaintiff. It needs for its support no actual contractual relation, for the law will imply a quasi-contractual relation to uphold it, whenever the circumstances so require.' See also *Whitehead* v. *Peck,* 1 *Ga.* 140; *Bell* v. *Hobbs, Ga. Dec.* Part 2, 144; *O'Neal* v. *Deese,* 23 *Ga.* 477; *Rudisill* v. *Handley,* 9 *Ga. App.* 789 (72 S. E. 189) ; *Haupt* v. *Horovitz,* 31 *Ga. App.* 203 (120 S. E. 425)." *Dobbs* v. *Perlman,* 59 *Ga. App.* 770, 774 (2 S. E. 2d, 109). In the *Lightfoot* case, supra, after holding that there was no enforceable contract, the court held: "There being no contract or purchase, the agents named in the writing, with whom a certain sum of money was deposited by the intending purchasers, as 'part of the named purchase-money to bind the trade,' had no legal right to retain it, either under the terms of the alleged contract or for services leading up to the same." In the *Chatham Motor Company* case, supra, it was held that the plaintiff had a cause of action for money had and received for the proceeds derived from the sale of an automobile where there was no enforceable agreement for the purchase of another automobile. We think that the allegations of the petition in the present case show a cause of action by the plaintiff against each of the defendants for money had and received. The money was first received by Reid as the duly authorized agent of the American Tire Company, and was disbursed among the defendants with the defendants having knowledge as to its source and the purpose for which it was given to Reid. For it the defendants gave

nothing, and in equity and good conscience it belongs to the plaintiff. The trial judge properly overruled the general demurrers to the petition.

■ The grounds of special demurrer which the trial judge overruled were directed against certain paragraphs of the petition as being conclusions of the pleader, and were without substantial merit. No error is shown by the action of the trial judge in this respect.

*Judgment affirmed in each case. Felton and Worrill, JJ., concur.*