## 50057. HOBBIEST FINANCING CORPORATION v. SPIVEY et al.

EVANS, Judge.

This is another one of the many cases we have had recently seeking to collect money loaned under the Industrial Loan Act. The loan contract was for $2,500, payable in monthly instalments of $127.92 for 24 months, total payments being $3,070.08. The note provided that under certain situations therein set out, including failure to pay instalments promptly when due, all remaining instalments would immediately become due and collectible; and after maturity the interest would be 8% per annum on all unpaid balance.

Plaintiff, Hobbiest Finance Corporation, sued the makers of the note (which included the executrix of the estate of one of them) when the note became in default, albeit several instalments had been paid. The complaint sought recovery of the sum of $2,859.09, representing remaining unpaid principal, interest and finance charges.

Defendants answered, contending the loan contract

was void in several particulars and prayed for recovery of all payments made under the void instrument.

Plaintiff then amended and in Count 1, sought to recover $2,468.41, representing principal, unpaid interest and finance charges to date of filing, and accrued late charges. In Count 2, plaintiff alleged it had loaned defendants $2,500; that defendants had repaid only $242.94, and plaintiffs sought therein to recover $2,282.62, together with interest from date of filing, and costs.

Defendants moved for summary judgment, contending the note violated the Industrial Loan Act (Code Ann. Ch. 5-3), and was therefore void, under the authority of *Lawrimore v. Sun Finance Co.*, 131 Ga. App. 96 (205 SE2d 110), and *Allen v. Alco Finance, Inc.*, 131 Ga. App. 545 (206 SE2d 547).

In opposition to the motion, plaintiff's general manager made affidavit that defendants had sought a penalty for the violation of the Federal Truth-In-Lending statute in the Federal Court, Northern District of Georgia, because the note sought more than $500 in interest, and was settled by payment of defendants' attorney fees of $250, court costs in the amount of $18, and $1,000 to these defendants because the obligation in question was in violation of the above statute. Plaintiff contended the aforesaid action now estopped the defendants from contending the loan contract was void. His affidavit also recited that defendants had not repaid the original $2,500 loaned to them.

The motion for summary judgment was granted, and plaintiff appeals. *Held:*

1. The statutory damages sought by defendants in federal court as a violation of the Truth-In-Lending Act (15 USCA § 1601 et seq.), which was settled for $1,000 (twice the finance charge), was a legal tort action authorized by the Federal law; and it is in no wise an estoppel of defendants to contend the loan contract was void. The charge of more than twice the sum of $500 under the contract, recovered by the defendants in that court, did not admit that the contract was valid. The language of 15 USCA § 1610 (d) provides that this statute and regulations do not affect the validity or enforceability of

any contract or obligation under state or federal law. Thus defendants are not estopped to contend that under Georgia law the loan contract is void.

2. The loan instrument shows on its face that it is void, for that it charges more than 8% per annum, in violation of Code Ann. § 25-315 (a); and it charges and adds $570.08 to the loan of $2,500, showing total payment of $3,070.08. Under the authority of *Lewis v. Termplan, Inc.,* 124 Ga. App. 507, 508 (184 SE2d 473); *Lawrence v. Sun Finance Co.,* 131 Ga. App. 96, 97, supra; *Allen v. Alco Finance, Inc.,* 131 Ga. App. 545, supra, the loan instrument violates the Industrial Loan Act, by calculating and including more than the maximum interest which could be charged for a 24-month period. It also seeks to accelerate and collect unearned interest on the otherwise unmatured instalments upon default; and the same is usurious and void under the provisions of Code Ann. § 25-9903.

3. This case is controlled adversely to the plaintiff by the recent decision of the Supreme Court of Georgia in *Hodges v. Community Loan &c. Corp.,* 234 Ga. 427, wherein this court in *Hodges v. Community Loan &c. Corp.,* 133 Ga. App. 336 (210 SE2d 826), was reversed on the very same question to wit: May an action for money had and received be maintained even though the written obligation (loan contract) be declared null and void?

The Supreme Court held in a four to three decision that if the Industrial Loan Act declares the loan contract null and void, no recovery can be maintained for the principal, as the loan contract requires the principal as well as the interest to be repaid. It held that the lender forfeits not only the interest and other charges, but forfeits the principal as well.

Needless to say, this writer is in complete disagreement with this 4 to 3 decision by the Supreme Court of Georgia. See *Abrams v. Commercial Credit Plan, Inc.,* 128 Ga. App. 520, 522 (1) (197 SE2d 384).

As old as the hills is that law which prevents one man from retaining money which "in equity and good conscience" belongs to another. Originally, an action to recover was called *indebitatus assumpsit,* and then was narrowed to mere *assumpsit. Stein Steel &c. Co. v. K & L*

*Enterprises,* 97 Ga. App. 71 (102 SE 99), at page 73. But finally the action was designated as an action for "money had and received," and applied to all cases where money of the plaintiff was in the hands of the defendant, which defendant "in equity and good conscience" had no right to retain. It was held that if plaintiff could recover in equity he could likewise recover at law under an action for *money had and received. Rhodes & Son Furniture v. Jenkins,* 2 Ga. App. 475 (1) (58 SE 897), and at bottom of page 477, and "the gist of any such action is *equity and good conscience." Brackett v. Fulton National Bank,* 80 Ga. App. 467 (56 SE2d 486), at page 469, citing *Manry v. Williams Mfg. Co.,* 45 Ga. App. 833 (166 SE 222). And even though one may lend money to governing officials of a school district which they had no authority to borrow, yet an action for money had and received will recover the money for the plaintiff; and *no demand for repayment* is required prior to bringing suit. *Jasper School District v. Gormley,* 57 Ga. App. 537 (196 SE 232), at top of page 545 and in middle of page 546. One of the strongest and clearest expressions on this question was by Judge Nisbet in *Culbreath v. Culbreath,* 7 Ga. 64, and quoted approvingly in *Dobbs v. Perlman,* 59 Ga. App. 770 (2 SE2d 109), at page 774, as follows: ". . . 'If authorities were balanced — we feel justified in kicking the beam, and ruling according to that naked and changeless equity which forbids that one man should retain the money of his neighbor, for which he paid nothing, and for which his neighbor received nothing; an equity which is natural—which savages understand—which cultivated reason approves, and which Christianity not only sanctions, but in a thousand forms has ordained.' . . ."

In the case presently under consideration, what did the defendant do which "in equity and good conscience" entitled him to retain plaintiff's *principal?* Absolutely nothing!

If A borrows $100 from B, and as evidence of the indebtedness executes a note or other paper which is invalid, I can see how the lien set up in that paper may not be effective, or the interest may be usurious so as to nullify all of the interest, or attorney fees may not be collectible for some defect in the note. But why does B need any paper

whatever to collect the principal of the loan—the $100 originally loaned to A — when A admits that he borrowed the money and has not paid it back? To me it seems clear that an action for money "had and received" would lie to collect the principal of the $100, inasmuch as A admits he borrowed $100 from B and has not repaid him. Perhaps the lawyers of Georgia will be able to grasp the reasoning of the majority of the Supreme Court—I simply cannot!

However, under the status of our two appellate courts, right or wrong, the Court of Appeals must yield to decisions of the Supreme Court. "Ours not to reason why—ours but to do and die." We therefore reluctantly recognize that in this situation "might makes right" and we affirm grudgingly the judgment of the lower court in its grant of summary judgment to the defendant.

*Judgment affirmed. Deen, P. J., concurs. Stolz, J., concurs specially.*

ARGUED JANUARY 14, 1975 — DECIDED JUNE 18, 1975 — REHEARING DENIED JULY 9, 1975 — 

*Shoob, McLain, Jessee, Merritt & Lyle, George E. Duncan, Jr., Robert B. Hill,* for appellant.

*Davis, Clifford & Florence, G. W. Florence, Jr., J. Stephen Clifford, Henry R. Stringfellow,* for appellees.

STOLZ, Judge, concurring specially.

I concur in the judgment of the majority opinion, but not in the personal expressions of the majority.

As noted in the majority opinion, an action for money had and received is based on equitable principles. The cases cited by the majority offer excellent examples of the application of the maxim that no one ought unjustly to enrich himself at the expense of another. No such situation exists in the case sub judice. Hobbiest Finance Corp. did not come into this court or the superior court with clean hands. It operated outside the laws of the State of Georgia and the United States of America in lending money at a usurious interest rate. It sought to enforce its contract, and claim principal, unpaid interest, accrued late charges and attorney fees. The defendants were put to

the trouble and expense of retaining an attorney to defend and counterclaim. It was only *after* the defendants' answer and counterclaim were filed that the complaint was amended to add a second count seeking recovery of the principal only but did not renounce the relief previously sought. Rather than condemn, I applaud the Supreme Court for the *Hodges* decision. At last there is a reason to stay within the law that even unscrupulous lenders can understand.

EVANS, Judge. Addendum.

Methinks there can be detected a modicum (perhaps trifle more than a modicum) of criticism directed toward "the author"[1] (Judge Evans) in the specially concurring opinion.

The *majority opinion* (not just the author) does criticize the correctness of the Supreme Court's decision in *Hodges v. Community Loan &c. Corp.*, 234 Ga. 427 (a 4 to 3 decision) wherein it held that the lender not only forfeited *interest* for overcharging as to interest in a paper executed under the Industrial Loan Act, *but forfeited principal as well*. If you lend me $100, and I admit it, I will always owe you the principal amount of $100 until I pay you or until you release me! If I am in possession of your $100, and there is no dispute but that it is your money, and not mine, then, as has been held since time immemorial, you are entitled to recover the *principal,* even though perhaps for some reason you may not be entitled to recover interest or attorney fees, or a lien on the property. Such actions are now called "actions for money had and received" and proceed on the theory that "in equity and good conscience" the defendant is not entitled to retain money that belongs to another. But the Supreme Court turned this squarely around in *Hodges,* supra, and held that even the principal is forfeited if a usurious note is executed.

Now let us examine the language of the special

---

[1]The original special concurrence was directed against "the author," but now has been changed to "the majority."

concurrence in pertinent part: "I concur in the judgment of the majority opinion, *but not in the personal expressions of its author*[2] . . . *Rather than condemn, I applaud the Supreme Court for the Hodges decision. At last there is a reason to stay within the law that even unscrupulous lenders can understand.*" (Emphasis supplied.)

There is no construction to be placed on this language except it intends criticism of the majority view of the Third Division of the Court of Appeals. Why call this the "personal expression of its author" when two of our three members have agreed on this language?

We therefore take this opportunity and privilege of replying. The majority opinion in this case, is indeed critical of the opinion (4 to 3) by a majority of the Supreme Court. They have the last say-so; we are bound by and must accede to their decisions, *but there is no law that makes us like their decisions or prevents our disagreements therewith.*

Suffice to say that we reiterate our criticism of the correctness of *Hodges v. Community Loan &c. Corp.,* 234 Ga. 427, supra.

The special concurrence completely misunderstands the principle of an action for "money had and received." While time and again it has been stated that this principle is premised on the theory that one is not entitled to retain money which "in equity and good conscience" belongs to another (*Rhodes &c. Co. v. Jenkins,* 2 Ga. App. 475 (1) (58 SE 897)), that does not mean that an *equitable action* must be brought to recover the money, and the *Rhodes* case, supra, even holds that such action may be brought in the Justice of the Peace Courts. It says the plaintiff did not come into court with "clean hands." Surely it is well known that the term "clean hands" is used *only in equity cases.* Code § 37-104; 182 Ga. 333, 335 (2); 216 Ga. 509, 510. *Hodges,* supra, was *not an equity case,* but was an action at law. See *Jasper School District v. Gormley,* 57 Ga. App. 537, 544 (2) (196 SE 232).

---

[2]The original special concurrence was directed against "the author," but now has been changed to "the majority."

Finally, to illustrate how wrong is the reasoning of the special concurrence in this matter, let us look at this language: "At last there is a reason to stay within the law that even *unscrupulous lenders* can understand." (Emphasis supplied.) This term implies that the *lender* who parts with his money, and contracts for too much interest, is *unscrupulous* but what of that fellow who borrows money, and when it becomes due, not only fails to pay the interest (which is shown to be usurious) but takes advantage of this strange ruling of the Supreme Court *to also keep the principal and not repay it even though he has no semblance of right to keep it!*

Who is the more unscrupulous—the lender who parted with his money under a promise by the debtor that usurious interest would be paid—or that *miserable debtor* who not only refuses to pay interest, *but keeps the principal which "in equity and good conscience" is not his?*

An ancient English anagram states: "The law doth punish man or woman Who steals the goose upon the common — Yet turns that greater felon loose, Who steals the common from the goose."

*Deen, P. J., concurs.*