Donald BLANTON, et al.

v.

CITY OF MURFREESBORO, et al.

No. 3–86–0468.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 1, 1987.

Thomas A. Woodley, Mulholland and Hickey, Washington, D.C., John D. Schwalb, Bolin & Ash, Murfreesboro, Tenn., for plaintiffs.

Thomas L. Reed, City Atty., Reed, Rogers & Trail, Murfreesboro, Tenn., for defendants.

## MEMORANDUM

WISEMAN, Chief Judge.

This case presents an issue of first impression: whether a municipality's recalculation of the base wage rates of its firefighters violates section 8 of the 1985 Amendments to The Fair Labor Standards Act (FLSA), 99 Stat. 787, P.L. 99–150, codified at 29 U.S.C.A. § 215. For the reasons stated below, the Court holds that the actions of the City of Murfreesboro, Tennessee in mid–1986 did violate the Act and, therefore, awards summary judgment on the issue of liability to the plaintiff firefighters.

### I. Legal and Factual Background

On February 19, 1985, the United States Supreme Court decided *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). *Garcia* made the FLSA minimum-wage and overtime provisions expressly applicable to virtually all categories of state and municipal employees, including firefighters, thus overruling the Court's previous holding that employees performing "traditional governmental functions" were exempt from the requirements of the Act, *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

### A. The FLSA Amendments of 1985

In late 1985, Congress enacted a set of amendments to the FLSA which were intended to ease the fiscal transition for state and local governments newly subject to the Act. The amendments *inter alia* allowed governmental entities under certain circumstances to award compensatory time in lieu of cash overtime payments, and postponed the effective date of post-*Garcia* FLSA application to April 15, 1986 (one year after the *Garcia* mandate issued).

The legislative history [1] reveals that the amendments were the product of a carefully crafted compromise between the Senate and House and further represented an accommodation between the interests of governmental employees and their employers. Of particular importance to the present case was Section 8 of the bill, the anti-"discrimination" provision.

This provision, in effect adding a special temporary layer of protection for employees covered by FLSA to the safeguards already available in the Act, provided as follows:

> Sec. 8. A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under section 7 of the Fair Labor Standards Act of 1938 shall be held to have violated section 15(c)(3) of such Act. The protection against discrimination afforded by the preceding sentence shall be available after August 1, 1986, only for an employee who takes an action described in section 15(a)(3) of such Act.

29 U.S.C. § 215 note (hereinafter Amendment Section 8).

FLSA section 15(a)(3) provides:

> [I]t shall be unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify

---

1. Throughout this opinion, the Court is mindful of the Supreme Court's admonitions that although statutory interpretation begins with the language of an enactment, when ambiguity exists consideration of the legislative history and other circumstances of enactment may persuade a court that words were intended by Congress to take on significance other than their common or literal meaning. *See generally Offshore Logistics, Inc. v. Tallentire,* —— U.S. ——, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981).

in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).

FLSA section 7 contains the overtime and compensatory time provisions of the Act, including subsection (k), which establishes the hours (essentially 53 hours per week) above which overtime is triggered for firefighters. 29 U.S.C. §§ 207 and 207(k).

### B.  *Murfreesboro Reacts to Garcia*

Murfreesboro firefighters work 24 hours on and 48 hours off. In effect, this means that overtime is triggered when any firefighter works more than 159 hours (3 x 53) in any 21–day period. Shortly after the Supreme Court decided *Garcia*, the City of Murfreesboro adopted a series of resolutions to deal with the application of the FLSA. Resolutions of May 16 and July 11, 1985, Plaintiffs' Memorandum in Support of Motion for Summary Judgment, Exhibits 1 and 2. The City initially excluded meal and sleep time from compensable hours, then restored sleep time but continued to exclude 3 hours a day for meal times. These resolutions sought to effect an agreement with the city firefighters by providing that:

> Any employee objecting to the terms and provisions of this Resolution must reduce said objections to writing and file same with the City Recorder on or before June 1, 1985. Otherwise, it will be conclusively presumed the employee accepts the terms and provisions of this Resolution.

Resolution of May 16, 1985, section 5. Section 7 of this resolution and section 5 of the July 11, 1985 resolution further provided that:

> Through adoption of this Resolution, the City of Murfreesboro does not intend to accellerate (sic) the operative data of FLSA. The City of Murfreesboro hereby resolves to operate under the laws and regulations of FLSA at the latest date authorized by law.

The City, acting upon technical advice from the Institute for Public Service of the University of Tennessee and informal advice from the U.S. Department of Labor, believed that it was allowed to exclude meal times pursuant to an "agreement" with its employees as permitted by 29 C.F.R. § 785.19 and 785.22. No firefighter objected to these resolutions at the time designated for voicing them.[2]

In November, 1985, the FLSA amendments were enacted. As the April 15, 1986, effective date approached, 85 plaintiff firefighters notified the City by a petition that they had "selected Local No. 3035 of the International Association of Firefighters as their representative under Section 7(*o*)(2)(A)(i) for the purpose of discussing and possibly entering into an agreement regarding, among other things, the assignment and use of comp time in lieu of overtime pay." Letter of March 7, 1986, Memorandum in Support of Summary Judgment, Exhibit 4. On the 15th, 16th, and 17th of April, the first days of FLSA coverage, the firefighters objected in writing to the exclusion of meal time from their compensable hours.

On April 22, 1986, the city manager by memo informed the firefighters that:

> Your election requires the City to make appropriate changes in order to operate within its budget. Accordingly, your pay in the future will be based upon an hourly rate as set forth in the attached schedule. Meal time will be treated as "on duty" time. You will be paid overtime premium.... It is anticipated that your total earnings at the end of the year will be substantially the same as the amount budgeted.

Memorandum of E.C. Fite, Jr., Memorandum in Support of Summary Judgment, Exhibit 5 at 2 (hereinafter Fite memo). The City thereupon recalculated the base hourly wage rates of the firefighters downward in order to take account of the fact that the inclusion of meal times as compensable hours pushed the hours worked per

---

**2.** The Murfreesboro firefighters had no recognized labor organization to represent them. The City has taken the position that state law does not authorize city recognition of "any other type of union of public employees except for school teachers." Answer, para. 12.

21–day shift above the threshold for overtime compensation required by the Act.[3]

## II. *Analysis*

The novel[4] issues before the Court, as defined by section 8 of the 1985 amendments to FLSA and other relevant portions of Title 29, are (1) whether the plaintiffs "asserted coverage" under section 7 of the Act; (2) if so, whether the City's actions "discriminated" against the plaintiffs within the meaning of Amendment Section 8; and (3) if so, what the damages should be.

### A. *"Asserted Coverage"*

█ Plaintiffs describe their petition of March 7 and their later written objections to the mealtime exclusion as assertions of coverage within the meaning of Amendment Section 8. The City responds that, rather than an assertion of coverage, these actions of the firefighters represented:

(1) in the case of the March 7, 1986 letter, a "notification by the firemen of their desire to have the city recognize a union, an idea which had been rejected" previously; and (2) in the case of the objections to meal time, "a repudiation of the May, 1985 Regulation 785.22 agreement."

3. The Act requires that overtime (or comp time) be paid when more than 159 hours are worked in a 21–day period. Before inclusion of meal times, the firefighters would have worked 147 hours in a 21–day period: $7 \times 21$–hour shifts. With the inclusion of three one-hour meal periods per 24–hour shift, the total compensable hours became $7 \times 24 = 168$ hours per 21–day period. This necessitated payment of nine hours worked at the time-and-a-half rate required by the Act—thus, the necessity for downward adjustment to stay within the overall budget previously determined.

4. The parties have cited, and the Court's own research reveals, no cases construing the Amendments' application to alleged retaliatory actions taken by a public employer. Lawsuits raising somewhat similar issues have been filed, and settled, in two other federal district courts. *Hines v. City of Amarillo,* No. C.A.-2-85-0141 (N.D.Tex.); *Hendrix v. City of Griffin,* No. C86-18N (N.D.Ga.).

Two cases have been published dealing with the issues of whether *Garcia* or the 1985 Amendments to FLSA should be given retroactive effect. *See O'Quinn v. Chambers County,* 636 F.Supp. 1388 (S.D.Tex.1986); *Kartevold v. Spo-*

Affidavit of Sherry B. Carpenter [City Treasurer] in Response to Motion for Summary Judgment, paras. 16–17 [hereinafter Carpenter affidavit].

The City's defense on this issue, thus, viewed in the light most favorable to it, would characterize what occurred in the spring of 1986 as a contractual readjustment *within* the coverage of FLSA, rather than an assertion by the firefighters that they were entitled to the benefits of the Act. This interpretation by the City is belied, however, by the language of its own resolutions, by the statements of its officials, by the terms of the federal regulations at issue, and by the legislative history of Amendment section 8.

First, the City's argument is contradicted by the language of the May 16 and July 11, 1985 resolutions, quoted *supra,* that expressly disclaimed any intention of the City to operate under FLSA until the "latest date authorized by law"—April 15, 1986—the date on which the firefighters first began to assert their right to insist upon the inclusion of mealtime within compensable hours. Second, City Manager Fite himself described the meal-time objections as "consistent with [the firefighters'] rights under FLSA." Fite Memo at 2. Third, the federal regulation the City relied upon for its "agreement" with the firefighters was inapplicable to public sector employees.[5]

*kane County Fire Protection District,* 625 F.Supp. 1553 (E.D.Wash.1986).

5. The City has made much of the reasons for its reliance upon 29 C.F.R. § 785.22 rather than upon 29 C.F.R. § 553–1 *et seq.* The latter regulation was applicable to state and local firefighters before *Usery,* remained applicable to federal firefighters between *Usery* and *Garcia,* and presumably again became applicable to state and local firefighters after *Garcia.* Section 553.-15(a)(2), which was in effect as the *Garcia* decision became effective, provided that an employer using the provisions of section 7(k) to calculate overtime, as was the City, cannot exclude sleep and meal time from compensable hours of work where the employee is on a tour of duty of exactly 24 hours. A subsequent superseding regulation, promulgated by the Secretary of Labor on April 18, 1986, employs essentially identical language. Proposed Regulation 29 C.F.R. § 553.223(c)(2), 51 Federal Register 75 at 13420 (April 18, 1986).

The City appears to argue that its reliance on the private-sector regulations was both understandable because it was so advised by the University of Tennessee consultants and by middle-

Finally, the legislative history indicates that the drafters intended that an "assertion of coverage" need be only "some act constituting notification to an employer" that employees are "covered by the overtime provisions of the FLSA." *See* Joint Explanatory Statement of the Committee of Conference, House Conference Report No. 99–357 at 8, *reprinted in* 1985 U.S. Code Cong. & Ad.News 651, 670 (hereinafter Joint Explanatory Statement); Remarks of Rep. Hawkins, 131 Cong.Rec. H9916 (daily ed. Nov. 7, 1985).

The Court holds, therefore, that there are no genuine issues of material fact[6] and that, as a matter of law, the actions of the firefighters on March 7 and April 15–17, 1986 "asserted coverage" within the meaning of Amendment section 8.

### B. *"Discrimination"*

█ Plaintiffs assert that the unilateral downward recalculation of their base wages by the City constituted "discrimination" within the meaning of Amendment section 8. The Court agrees.

The City argues that there are unresolved issues for trial on the issue of whether its "action was, in fact, retaliation." Transcript of oral argument at 12. Whether the city's motive or intent was not in fact retaliatory may be a disputed factual question, but, even if proven by the City, is not material to the resolution of this case.

Although Amendment section 8 itself contains no definition of the term "discriminate" or discrimination, the language of the statute does make clear that its meaning is distinct from the meaning of the term contained in FLSA section 15(a)(3),

which Amendment section 8 temporarily supplanted.[7] The legislative history, however, provides some clarification.

Section 8 represented a conference compromise. The Senate version of the bill had prohibited discrimination as defined by FLSA section 15(a)(3). The House amendment had prohibited discrimination with respect to wages or other terms or conditions of employment. The conference substitute adopted the House version "with the following understandings as to the scope of protection provided:"

> The antidiscrimination provision is meant to apply ... where an employer's response to the assertion of FLSA coverage is to reduce wages or other monetary benefits for an entire unit of employees.... [T]he actual victims of discrimination must show that coverage was asserted and they also must show actual discrimination, i.e., that the employer's action constituted retaliation for the ... employee's assertion of coverage and avoidance of the asserted protections of Federal law. If a court so finds, that conduct would be unlawful under section 8....
>
> A unilateral reduction of regular pay or fringe benefits that is intended to nullify this legislative application of overtime compensation to state and local government employees is unlawful. Any other conclusion would be in effect invite public employers to reduce regular rates of pay shortly after the date of enactment so as to negate the premium compensation mandated by this legislation.

Joint Explanatory Statement at 8–9, 1985 U.S.Code Cong. & Ad.News at 669–70.

---

echelon officials of the U.S. Department of Labor, and also that its actions should be regarded somehow as valid because the advice it received from its federal source was misleading. The City's argument ignores the fact that section 553.1 *et seq.* were never revoked, and the fact that "[i]n August, 1985, the City of Murfreesboro became aware of Regulation 553." Carpenter affidavit, para. 14. *See also infra* IIC, discussing the defense of "good faith" in FLSA litigation.

**6.** Counsel for the City agreed that there were no disputed facts on this issue at oral argument on this motion. Transcript of oral argument at 14.

**7.** *See* part IA., *supra,* for text of 29 U.S.C. § 215(a)(3). The intent standard under this section used by most courts is that retaliation be the "immediate cause or motivating factor" for an adverse action, regardless of whether other grounds for the action exist. *See Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179 (8th Cir. 1975); *Bomham v. Copper Cellar Corp.,* 476 F.Supp. 98 (E.D.Tenn.1979).

Further gloss on the standard of intent Congress meant to require for employer liability under Amendment section 8 is provided by Rep. Hawkins, the House conferee manager of the bill:

> [T]he conferees debated at length whether or not to impose an intent standard in conjunction with section 8, the provision providing for protection against discrimination. A series of words were offered and rejected, including "motivated," and the word "intended" itself. Each of these words was rejected for the specific purpose of ensuring that section 8 would *not be construed to require a showing of intent* in conjunction with an employee's discrimination charge.

Remarks of Rep. Hawkins, 131 Cong.Rec. H9916 (Nov. 7, 1985) (emphasis added).

The legislative history indicates that a municipal or state government could cope with the economic impact of FLSA application is either of three ways without triggering section 8. First, a public employer's "adjustment of work schedules to reduce overtime hours," even if done during the period when section 8 was effective,[8] is "permissible under the Act." Joint Explanatory Statement at 8, 1985 U.S.Code Cong. & Ad.News at 670. Second, the employer could make use of the Amendments' comp time provisions. Finally, the employer could "adjust[ ] rates of pay at some later point in response to fiscal concerns not directly attributable to the impact of extending FLSA coverage to their employees." *Id.* at 9, 1985 U.S.Code Cong. & Ad.News at 670–71.

What the City of Murfreesboro did was precisely what the Act's drafters expressly proscribed:

> The compensatory time and deferred effective date provision of these amendments are to relieve the economic impact of having to comply with the FLSA's premium rate requirements for overtime. Having provided for this relief, we agreed to preserve the same premium rate requirement that has been a part of FLSA for nearly 50 years. We did not, at the same time, authorize employers to undermine that premium rate with impu-

nity. In what we view as analogous circumstances, DOL regulations explicitly *condemn employer efforts to adjust or recalculate regular rates of pay* so as to evade the overtime requirements of the Act.

*Id.,* citing 29 C.F.R. § 778.500 (emphasis added).

In short, the Court reads the language and legislative history of Amendment section 8 to carry out a Congressional intent to afford public employers a choice of several mechanisms to comply with the impact of FLSA coverage, including: delay of the effective date of coverage to April 15, 1986; the option of "paying" comp time in lieu of cash for overtime; an adjustment of work schedules; a "later" adjustment of rates of pay in response to budgetary concerns not directly attributable to FLSA coverage; and an August 15, 1986 closeout date for the reduced intent standard of Amendment section 8 itself. What was *not* allowed was precisely what the City here did: a downward recalculation of regular rates of pay for an entire unit of employees in response to an assertion of coverage under the Act.

The Court concludes that there are no issues of material fact and that, as a matter of law, the City's actions constituted "discrimination" within the meaning of Amendment section 8.

C. *Liability, Damages and "Good Faith"*

FLSA section 16(b) provides that any employer, including a public agency, which violates the provisions of section 15(a)(3):

> *shall* be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [section 15(a)(3) ], including without limitation employment, reinstatement, promotion, and the payment of *wages lost and an additional equal amount as liquidated damages* .... The court in such action *shall,* in addition to any judgment awarded, ... allow a reasonable attorney's fee to be

---

**8.** Section 8's transitional life extended from April 15, 1986 to August 15, 1986.

paid by the defendant, and costs of the action.

29 U.S.C.A. § 216(b) (West Supp.1986).

There are two possible statutory defenses of good faith that were potentially available to the City in this action. Neither, however, is available under the facts and procedural history of this case.

■ First, 29 U.S.C. § 259 provides an exemption from liability for employers violating the FLSA who plead and prove "that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Administrator of the Wage and Hour Division of the Department of Labor. The City here, however, relied not upon a written ruling or other document from the Administrator but upon informal verbal advice from a lower-ranking official. This is insufficient as a matter of law to invoke the protection of 29 U.S.C. § 259. *See Hodgson v. Square D. Co.*, 459 F.2d 805, 809–11 (6th Cir.), *cert. denied*, 409 U.S. 967, 93 S.Ct. 293, 34 L.Ed.2d 232 (1972).

■ Second, 29 U.S.C. § 260 provides an employer a defense of good faith to the liquidated damages provision of 29 U.S.C. § 216 if it can "sustain a 'plain and substantial burden of persuading the court by proof'" that its actions were in subjective and objective good faith. If the employer carries this burden, the court may remit all or part of the liquidated damages mandated by section 216; otherwise, the award is mandated. *McClanahan v. Mathews*, 440 F.2d 320 (6th Cir.1971), quoting *Rothman v. Publicker Industries, Inc.*, 201 F.2d 618, 620 (3d Cir.1953).

The City here has neither pleaded nor offered to prove good faith pursuant to 29 U.S.C. § 260 of the Portal-to-Portal Act; indeed, at oral argument, the City waived the issue upon inquiry by the Court. Transcript of Oral Argument at 12.

■ The Court also has no discretion but to award attorney's fees to a prevailing plaintiff;[9] only the reasonableness of the

amount is left by the statute to the sound discretion of the court. *Luther v. Z. Wilson, Inc.*, 528 F.Supp. 1166, 1176 (S.D.Ohio 1981).

### III. *Conclusion*

For the reasons stated above, the Court grants partial summary judgment on liability, holding that the City violated Amendment section 8, that the plaintiff firefighters are entitled to appropriate back wages to make up for the missing differential, that the judgment must be doubled pursuant to the liquidated-damages provision of 29 U.S.C. § 216(b), and that the plaintiffs are entitled to reasonable attorney's fees.

An appropriate order shall issue. The parties are directed either to agree on a stipulated amount of damages or to submit within 10 days their respective positions on this issue.

---

**9.** Most courts have held that FLSA section 16 requires an award of attorney's fees even if good faith is established pursuant to 29 U.S.C. § 260. *See Luther*, 528 F.Supp. at 1176 and

cases cited therein. Because the City has not sought to establish good faith, however, this principle is not necessary to the Court's decision that attorney's fees are mandated here.