INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 349, et al., Plaintiffs,

v.

CITY OF ROME, GEORGIA, et al., Defendants.

Civ. A. No. 4:86–cv–351–HLM.

United States District Court, N.D. Georgia, Rome Division.

March 21, 1988.

---

Allan Leroy Parks, Jr. Meals Kirwan Goger Winter & Parks, Atlanta, Ga., for plaintiffs.

Robert Maddox Brinson, Terri Sue Patterson, Brinson Askew & Berry, Rome, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on the Plaintiffs' Motion for Partial Summary Judgment and the Defendants' Motion for Summary Judgment. Also pending is the Defendants' Motion for Reconsideration of the denial of their Motion To Amend the Answer. For the reasons set forth below, the Defendants' Motion for Summary Judgment shall be GRANTED in part and DENIED in part; the Plaintiffs' Motion for Partial Summary Judgment shall be DENIED; and the Motion For Reconsideration shall be DENIED.

This action was brought by the International Association of Firefighters, Local 349, and individual firefighters of the City of Rome, Georgia, (the firefighters) to recover back pay, liquidated damages, attorney's fees, and costs. The firefighters allege that the City and several of its officials (hereinafter referred to collectively as "the City") have violated the overtime provisions of the Fair Labor Standards Act of 1938, as amended, Pub.L. 99–150, 99 Stat. 787, codified at 29 U.S.C. § 201, *et seq.* (FLSA). The principal issue presented is whether eight hours of sleep time in the plaintiffs' regularly scheduled tours of duty may be excluded from "hours worked" for computing their overtime under the FLSA. In their complaint, the firefighters allege that the City artificially adjusted the work schedule without their consent to exclude sleep time in violation of the Act. If sleep time were included in the hours worked, overtime compensation would be due under the FLSA.

■ A brief overview of the FLSA is necessary. It is important to bear in mind that the FLSA is remedial in nature and should be read liberally in favor of workers. *See, e.g., H.B. Zachry Co. v. Mitchell,* 262 F.2d 546, 549 (5th Cir.1959), *aff'd,* 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753 (1960). Exceptions and exemptions to coverage provisions that preclude the payment of overtime compensation should be construed narrowly against those who seek to avoid overtime liability. *See, e.g., Brennan v. Sugar Cane Growers Cooperative of Fla.,* 486 F.2d 1006, 1011 (5th Cir.1973).

### I. The Application of the FLSA to the City of Rome

The FLSA prescribes, *inter alia,* a certain minimum hourly wage and an overtime rate equal to one and one-half times the regular work wage. *See* 29 U.S.C. §§ 206, 207. Originally, the Act was not applicable to public employers. 29 U.S.C. § 203(d) (1940). In 1974, however, Congress expanded FLSA coverage to all remaining state and local government employers not then covered by the Act. *See* 29 U.S.C. § 203(d).

When called to rule upon these amendments, the Supreme Court held them unconstitutional as applied to certain public agency employers involved in administering traditional governmental functions, such as police protection, fire prevention, public health, parks and recreation, etc. *See National League of Cities v. Usery,* 426 U.S. 833, 851, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245, 257 (1976); *overruled by Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The *National League of Cities* Court reasoned that the Tenth Amendment denied Congress the power to "force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made." *National League of Cities,* 426 U.S. at 855, 96 S.Ct. at 2476, 49 L.Ed.2d at 259.

Nine years later, in *Garcia,* the Court overruled *National League of Cities.* The *Garcia* Court reasoned that the constitutional test set out in *National League of Cities,* the determination of whether certain State and local governmental functions were traditional was "unsound in principal and unworkable in practice." *Garcia,* 469 U.S. at 546, 105 S.Ct. at 1016, 83 L.Ed.2d at 1031.

Cognizant of the far-reaching impact of *Garcia,* Congress amended the FLSA to delay its application to State and local public sector employers until April 16, 1986.

This delay provided these employers approximately one year to make arrangements for implementation of the FLSA requirements.

The new amendments authorized promulgation of new regulations by the Secretary of Labor. The federal agency charged with administering the Act is the Wage and Hour Division of the Department of Labor (W & H).

### A. The FLSA Overtime Provisions for Firefighters

Section 7(k) of the Act, 29 U.S.C. § 207(k), provides an exception to the general provisions that prescribe a 40–hour work week and overtime compensation for hours worked above 40. Section 7(k) recognizes the unique work demands of firefighters and provides that public fire protection employers shall not have violated the maximum hour and overtime provisions of the Act if overtime of one and one-half times the regular hourly rate is paid for any hours above 212 worked in a 28–day work period. *See id.* The applicable regulations that implemented section 7(k) of the statute are found at 29 C.F.R. § 553.221 (1987).[1]

For calculating compensable hours worked, the regulations adopt the concept of a "tour of duty" rather than the traditional work day:

> The term "tour of duty" ... as used in section 7(k), means the period of time during which an employee is considered to be on duty for purposes of determining compensable hours. It may be a scheduled or unscheduled period. Such periods include "shifts" assigned to employees often days in advance of the performance of the work. Scheduled periods also include time spent in work outside the "shift" which the public agency employer assigns.

29 C.F.R. § 553.220 (1987).

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employees' principal activity or which are closely related to the performance of the principal activity....

29 C.F.R. § 553.221(b) (1987).

### B. The FLSA's Provisions on Sleep Time of Firefighters

The general rule regarding sleep time of firefighters is that during such time firefighters are "engaged to wait," are engaged primarily for the benefit of the employer, and should be compensated for such hours. Section 552.222 provides, however, that sleep time of public agency firefighters may be excluded in certain circumstances:

> (b) Where the employer has elected to use the section 7(k) exemption, sleep time cannot be excluded from the compensable hours of work where (1) the employee is on a tour of duty of less than 24 hours ..., and (2) where [sic] the employee is on a tour of duty of exactly 24 hours, which is a departure from the general rules in Part 785.

> (c) Sleep time can be excluded from compensable hours of work [of] firefighters who are on a tour of duty of more than 24 hours, *but only if there is an express or implied agreement between the employer and the employees to exclude such time. In the absence of such an agreement, the sleep time is compensable.*

29 C.F.R. § 553.222 (1987) (emphasis added). Thus, the City legally could exclude sleep time from compensable hours worked only if both of these conditions were met: the existence of a tour of duty of more than 24 hours and the existence of an agreement with the firefighters to exclude sleep time from hours worked.

---

1. The 1986 regulations, located at 29 C.F.R. Part 15 (1986), are essentially identical to the 1987 regulations. For convenience, the 1987 regulations are cited herein, with any significant changes from the 1986 regulations noted.

## II. The Implementation of the FLSA Provisions by the City of Rome

Prior to July 15, 1985, the City operated a work schedule for its firefighters of 24 hours on duty, alternating with 48 hours off duty. Firefighters were free to sleep during the 24–hour shift, and sleeping quarters were provided. Firefighters were hired and paid on the basis of an annual salary. If required to work in excess of their assigned shifts, they were paid an overtime wage based on their effective hourly wage.

On July 10, 1985, subsequent to *Garcia,* but nine months prior to the effective date of the FLSA, the City informed all fire department employees, by memorandum, that, as of July 15, 1985, the work schedule would be changed to comply with the FLSA.

The new schedule would comprise tours of duty of 24 hours and 15 minutes on duty, alternating with 47 hours and 45 minutes off duty. Eight hours of sleep time would be deducted from the tour of duty in computing the number of hours worked for overtime payment. The 15–minute increase in the tour of duty and the exclusion of sleep time were said to be in compliance with the regulations. The firefighters' annual salary would remain unchanged because the increase in the length of the shift of 15 minutes did not warrant an increase in compensation.

The amount of opposition to this new policy is disputed. In affidavits filed in this action, City Manager John Bennett and Personnel Director Diane Smith state that 29 objections were received from the firefighters. The City responded with another memorandum explaining its reasons for the changes. The City alleges that after publication of this memorandum, no other objections were received.

The firefighters assert that many more firefighters objected and made known to the City the widespread disapproval of the policy. Numerous affidavits from individual firefighters have been filed, which attest that their objections to the policy were made known to the City prior to the adoption of the new plan.

## III. The Validity of the New Tour of Duty and the Agreement to Exclude Sleep Time

The firefighters challenge the City's actions on two main grounds: first, they contend the increase in the work period was not a *bona fide* schedule change, but a subterfuge to avoid the requirements of the Act. Second, they contend there existed no agreement between the firefighters and the City for the exclusion of sleep time from overtime computations. Finding genuine issues of fact with regard to these questions, the Court must deny summary judgment. Fed.R.Civ.P. 56. In holding that these issues of fact are material, however, the Court must construe the regulations and examine the relevant legal principles.

### A. The Validity of the New Tour of Duty

The firefighters contend that the 15 minute change in the tour of duty is not a valid, *bona fide,* schedule change, but is a subterfuge, an artificial device designed to avoid illegally the overtime provisions of the FLSA. The City maintains that the schedule change complies with the regulations because the regulations provide no minimum amount of time by which the work period must exceed 24 hours.

While it cannot be disputed that the new tour of duty exceeds 24 hours, a schedule change may not be implemented merely as a subterfuge to avoid the applicability of the FLSA. The Supreme Court addressed a similar issue in *Walling v. Helmerich & Payne,* 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29 (1944). There, in response to the application of the FLSA, an employer recalculated the rate of pay and the hours worked "to insure that the total wages for each tour would continue the same as under the original contracts," thereby avoiding the necessity of increasing wages or decreasing hours according to the Act. *Id.* at 38–39, 65 S.Ct. at 12. The Court held this scheme to be illegal:

The Act clearly contemplates the setting of the regular [wage] rate in a bona fide

**528**

manner ... provided that the statutory minimum is respected. But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes.... Any other conclusion in this case would exalt ingenuity over reality and would open the door to the insidious disregard of the rights protected under the Act.

*Id.* at 40, 65 S.Ct. at 14.

Similar is *Blanton v. City of Murfreesboro,* 658 F.Supp. 1540 (M.D.Tenn.1987). There the Court held that the City violated the antidiscrimination provisions of the FLSA, *see* 29 U.S.C. § 215 note, where it unilaterally reduced firefighters' regular pay rate in order to avoid the legislative application of the overtime compensation provisions of the Act. *Id.* at 1544–45, *quoting* Joint Explanatory Statement at 8–9, 1985 U.S.Code Cong. & Ad.News 651, at 669–70. *See also* 29 C.F.R. § 553.224 (1987) (beginning of a work period may be changed if the change is intended to be permanent "and is not designed to evade the overtime requirements of the Act"); *Broch v. Two "R" Drilling Co., Inc.,* 789 F.2d 1177, 1180 (5th Cir.1986) (under 29 C.F.R. § 778.210, bonus was not premium excludable from regular rate of pay for computing overtime, where bonus was not a sham or device to evade overtime requirements of the Act).

■ In determining whether the extension of the tour of duty was a genuine schedule change or was merely a device to evade the requirements of the Act, the Court considers important three factors: (1) the reason for the change, (2) whether the extension in the tour of duty was compensated, and (3) whether the firefighters agreed to the schedule change.

The City candidly admits that the only reason for the extension was to take advantage of the provisions allowing deduction of the eight hours per shift from hours worked so as to avoid overtime payments. This motive, in itself, is not improper.

The increase in the tour of duty, however, was made without any additional compensation. In its memorandum which responded to firefighter protest to the change, the City stated that the additional period was considered too insignificant to warrant any additional compensation. The firefighters' pay remained constant before and after the change.

In its Response to the Plaintiffs' Statement of Undisputed Facts, the City takes the opposite position, asserting that it disputes the extra time was not compensated. In effect, it reasons that the work shift was "converted" to twenty-five hours, and eight hours sleep time was deducted, leaving seventeen compensable work hours. Thus, it maintains, the firefighters were in fact compensated for an entire hour for the added 15 minutes of work. This argument does not speak strongly for the City's good-faith approach to the problem. No matter how it "recalculates" the hourly rate, it is undisputed that the tour of duty was increased and compensation remained constant. Thus, the increased time was uncompensated.

■ The failure to compensate the firefighters for the extension in the tour of duty, itself, is in violation of the Act. Prior to the new policy, the firefighters already reported approximately 15 minutes early to relieve the outgoing shift. This practice, common among firefighters, is called "early relief." When early relief is required by the employer, it is compensable time:

It is a common practice among [firefighters] to relieve employees on the previous shift prior to the scheduled starting time. Such early relief may occur pursuant to employee agreement, either expressed or implied. This practice will not have the effect of increasing the number of compensable hours of work for employees employed under section 7(k).... On the other hand, if the practice is required by the employer, the time involved must be added to the employer's tour of duty and treated as compensable hours of work.

29 C.F.R. § 553.225 (1987).

The City admits that the new policy made the voluntary practice a requirement. The failure to compensate for this increase in the shift violates § 553.225.

The Court considers this factor to be important in characterizing whether the increase in the shift was *bona fide* or artificial. On one hand, the City, in direct conflict with the regulations, dismisses the increase as so insignificant as to warrant no increase in pay. On the other hand, it argues that the increase constitutes a legitimate expansion of the tour of duty to warrant the exclusion of eight hours of sleep time. On the undisputed facts, this factor weighs in favor of the firefighters.

■ The third factor is whether the employees agreed to the increase. The City as an employer, of course, need not have an agreement with its employees to extend its required tours of duty for firefighters. Where there is such an agreement, however, the firefighters will have a heavier burden to show that the extension was an illegitimate subterfuge. This factor cannot be determined on summary judgment because of the existence of genuine issues of fact about whether an agreement to the new policy existed.[2]

### B. The Existence of an Implied Agreement to Exclude Sleep Time From Hours Worked

■ As provided in 29 C.F.R. § 553.222, sleep time is includable as compensable hours worked unless the firefighters are working tours of duty of more than twenty-four hours and the employer and employees enter an agreement, express or implied, to exclude such time. The City admits that there is no express agreement. It contends that an implied agreement may be inferred from the firefighters' receipt of notice of the new policy and their continuing to report to work and to accept their paychecks.

In construing the same regulatory requirement, the Court of Claims examined the requirements of an implied contract: "In order for a contract implied in fact to exist, there must be a meeting of minds and mutual consent to be bound." *Beebe v.*

*United States*, 640 F.2d 1283, 1291, 226 Ct.Cl. 308 (1981) (citations omitted). The intention of the parties, as the City admits, is the determining factor. *See, e.g., Skidmore v. Swift Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed.2d 124 (1944); *see also Eaves v. J.C. Bradford & Co., Inc.*, 173 Ga.App. 470, 471, 326 S.E.2d 830 (1985); *Dawes Mining Co. v. Callahan*, 154 Ga.App. 229, 231–32, 267 S.E.2d 830 (Ga.App.1980).

The City contends that this implication of mutual consent may be found, even if the firefighters expressed opposition to the new policy. The City blithely asserts that firefighters who disliked the new policy could simply seek employment with another employer whose working conditions better suited their needs. The Court cannot agree.

To accept the City's proposed construction of § 553.222 would be to eliminate the independent requirement of an agreement from the regulation. A construction that renders that requirement meaningless will be rejected. If the regulation gave the employer absolute, unfettered discretion to unilaterally exclude sleep time, the firefighters still would have the option to acquiesce or quit. The basis for an implied agreement under the City's reasoning would exist even in that event. A continuation in working and accepting pay may be evidence of an implied agreement, but it is not conclusive.

The Court holds that under § 553.222, an implied agreement to exclude sleep time may not be inferred from a continuation in working and accepting pay checks where there exists contemporaneous protest to the employer's institution of a policy to exclude sleep time. There is no need to search for implications of mutual consent when there is clear contemporaneous expression of dissent. All firefighters who expressed disagreement with the changes cannot be held to have agreed, despite their continuation in working and accepting pay.[3]

---

**2.** Even if the extension may otherwise be in violation of the regulations, the City may be shielded from liability by the Portal to Portal Act for its action in extending the tours of duty. *See infra* Part IV.

**3.** In the same Part 553 of Title 29 of the regulations, the requirement of an agreement is also a

In so holding, the Court follows *Beebe v. United States*, 640 F.2d 1283, 226 Ct.Cl. 308 (1981) and *Jacksonville Prof. Fire Fighters Assn. v. City of Jacksonville*, No. 86–58–CIV–4, slip op., (E.D.N.C. May 28, 1987). In *Beebe* the Court of Claims was presented with the nearly identical situation presented here. The FLSA regulations became applicable to federal firefighters in 1975, and firefighters objected to the exclusion of sleep time without their consent. The Regional Director of the Civil Service Commission, charged with administering the program, found that the firefighters had implicitly agreed to the exclusion by virtue of their continuation in employment and receipt of paychecks. *Beebe*, 640 F.2d at 1289–92. The court rejected this reasoning, holding that no contract could be implied where the facts showed the firefighters continued to protest the exclusions:

> In order to preserve their rights under defendant's theory, it would have been necessary for plaintiff firefighters to refuse to accept their pay checks for a period of nearly 4 years. We reject out of hand the government's tenuous argument, because we find there is no legal basis for it.

*Id.* at 1291. In *Jacksonville*, when offered the same argument by the City of Jacksonville, the district court responded:

> To uphold defendant's argument would mean placing plaintiffs in a "Catch–22" no-win situation. Plaintiffs would be forced to agree in order to keep their jobs or quit to show their objection. Furthermore, these facts are hardly indicative of a meeting of the minds or mutual consent necessary for finding an implied contract.

*Jacksonville* at 12. The court held that the defendant's deduction of sleep time "where no prior agreement with plaintiff firefighters existed, [was] in violation of 29 C.F.R. § 553.15." [4] *Id.* at 14.

The City of Rome attempts to distinguish *Beebe* and *Jacksonville* on the ground that there the firefighters originally were paid an hourly wage, and sleep time had never been deducted before the new policy was instituted. Here, it contends, the firefighters were salaried employees and sleep time was never considered part of the hours worked.

The parties in the instant case dispute whether sleep time was formerly included in the hours worked, and the issue cannot be resolved on summary judgment.[5] But the distinction made by the City does not touch the principle of *Beebe* and *Jacksonville* relevant here: that an implied contract to exclude sleep time may not be shown from a continuation in employment where the firefighters have protested the exclusion.

The City relies on several cases where courts have held that an implied agreement to a schedule change may be inferred from a continuation in working. *See Ariens v. Olin Mathieson Chemical Corp.*, 382 F.2d

---

condition of an employer's use of compensatory time off in lieu of overtime payment in cash. *See* 29 C.F.R. § 553.23. That section defines what is meant by agreement, and provides that such agreement must be arrived at *before* the performance of work. *Id.* It further provides the following:

> An agreement ... may be evidenced by a notice to the employee that compensatory time off will be given in lieu of overtime pay. In such a case, an agreement ... would be presumed to exist ... with respect to any employee *who fails to express to the employer an unwillingness* to accept compensatory time off in lieu of overtime pay, and who accepts compensatory time in lieu of overtime pay after being so notified.

*Id.*, § 553.23(c) (emphasis added). This definition of agreement in Part 553 lends further support to the firefighters' position.

4. 29 C.F.R. § 553.222 (1987).

5. The City cites to an affidavit of firefighter Kinnard for its allegation that the firefighters admitted that they never considered that they were on duty for the full 24–hour shift. It is true that Kinnard makes this statement in his affidavit. Read in context, however, the statement is not as clear as the City suggests. In the following sentences, Kinnard also states that the City's deduction of sleep time from hours worked was "contrary to all representations regarding pay at the time of hire." Affidavit of Wesley Kinnard, Plaintiff's Brief in Opposition To Defendants' Motion For Summary Judgment, Exhibit.

192 (6th Cir.1967); *General Electric Co. v. Porter,* 208 F.2d 805 (9th Cir.1953), *cert. denied,* 347 U.S. 951, 975, 74 S.Ct. 676, 787, 98 L.Ed. 1097, 1115 (1954); *Shepler v. Crucible Fuel,* 140 F.2d 371 (3d Cir.1944); *Rousseau v. Teledyne Movible Offshore, Inc.,* 619 F.Supp. 1513 (W.D.La.1985), *aff'd in part, rev'd in part,* 805 F.2d 1245 (5th Cir.1986), *cert. denied,* — U.S. ——, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987).

All of these cases, however, are distinguishable. None involved a regulatory requirement of an agreement that was a condition to the propriety of the employer instituted policy. An agreement under § 553.222 is a *condition precedent* to the proper exclusion of sleep time. This is the only plausible reading of the regulation.[6]

Unfounded is the City's concern that this conclusion ignores the intention of the parties expressed in the original salary-based employment agreements. The City contends that the annual compensation has not changed and that the firefighters may not use the FLSA to circumvent the original employment agreement.[7] The City further maintains that if sleep time is held includable, the firefighters will receive an unjustified windfall.

The City's argument is without merit. If the City had not altered its schedule in any way, the firefighters would be working 24-hour tours of duty, sleep time would be includable, and overtime compensation would be due. There is nothing improper in overtime being due when the work hours exceed 212 in a 28-day period. This is what the statute provides. *Cf. Walling v. Helmerich & Payne,* 323 U.S. at 38–39, 65 S.Ct. at 12 (employer violated FLSA by artificially adjusting wage rate, even though it adjusted rate to maintain originally agreed-upon compensation).

The City also contends that the firefighters' position is suspect because they seek compensation only for hours worked above 212 per 28–day tour of duty, and not for the hours between 212 and the 160 hours now compensated with sleep time excluded. This argument is without merit because, under the regulations, the firefighters are entitled to overtime compensation only for hours above 212. Any hours below 212 would be compensable at the regular hourly rate. If sleep time is includable, the annual salary would be divided by all hours worked, including sleep time, which would result in a lower hourly rate than that computed with sleep time excluded.

In summary, the Court holds that pursuant to § 553.222 no plaintiff firefighter who expressed opposition to the exclusion of sleep time from hours worked can be held to have implicitly agreed to the exclusion. Because genuine issues of fact exist on the opposition expressed by the firefighters, summary judgment must be denied.

*IV. The Portal-to-Portal Act Defense*

The City raises as an affirmative defense, the good faith exemption of section 10 of the Portal to Portal Act, 29 U.S.C. § 259. It contends that its institution of the new policy was in reliance upon and in conformity with advisory opinions received from the Wage and Hour Division of the Department of Labor (W & H). The firefighters contend that the exemption is not available because the written materials from the agency were received *after* the policy was instituted and because the materials do not address the central question of whether continuation in work constituted agreement.

■ The Portal–To–Portal Act, 29 U.S.C. § 259, provides a good-faith defense which

---

**6.** The City has noted that it makes a distinction between an agreed-upon policy and a requirement of an employer. In its argument that the 15–minute increase in the tour of duty was not a subterfuge, it argued that the early relief practice for the first time became a requirement of the employer. Yet, as noted, the difference the City holds between a requirement and an agreed-upon change is elusive: In either case,

under its reasoning, the employee may report to work or seek employment elsewhere.

**7.** It is true that the numerical, annual salary amount was not reduced; however, given that the hours were increased, it is difficult to argue that the effective compensation was not reduced.

bars actions for violations of the minimum wage and overtime compensation provisions of the FLSA. The defense comprises an objective test; the employer must plead and prove that

> the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency. The agency designated to provide interpretations of the FLSA is the Administrator of the Wage and Hour Division of the Department of Labor.

*Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir.1987), *citing, inter alia, Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.), *modified on other grounds*, 776 F.2d 265 (11th Cir. 1985); *E.E.O.C. v. Home Insurance Co.*, 672 F.2d 252, 263–65 (2d Cir.1982) (footnote omitted). The showing of objective good faith alone is insufficient: the employer must also show that it "acted 'in actual conformity with and in reliance on' written agency interpretation." *Id., quoting* 29 U.S.C. § 259. Further, oral advice from the agency does not qualify as a written interpretation under the statute. *Id.* at 929; *see also Soler v. G & U, Inc.*, 615 F.Supp. 736, 747 (S.D.N.Y.1985).

▮ In the instant case, the City has put forth no evidence of any written interpretation of W & H that it had received prior to its implementation of the policy. It submits affidavits of City management and of W & H Assistant Administrator Robinette. These affidavits aver that Robinette orally advised the City that the 15 minute addition to the tour of duty was in conformity with the Act and that notification of the new policy to the firefighters and their subsequent reporting to work, *even for one day*, was sufficient to constitute an implied agreement to the exclusion of sleep time. As the Eleventh Circuit held in *Cole*, this oral advice is insufficient.

▮ The City has produced copies of three W & H opinion letters which it apparently received subsequent to the implementation of the policy. One is dated July 1986, and two dated August 1986. The letters address issues similar to those facing the City. None is addressed to the City, and City has not revealed when it received copies of the letters.

Although written agency interpretation is required, the Court will not hold that because the written interpretations were not originally relied upon, the City was forever deprived of the benefit of the agency's written advice. Such a conclusion would raise form above substance. Once the City received such written interpretations, proper reliance upon them is protected by the Portal–To–Portal Act.

The City thus must demonstrate the three elements of the defense. Where an administrative interpretation fails to provide the necessary relevant guidance, reliance under § 259 is not possible. *See Cole*, 824 F.2d at 927; *see also Home Insurance Co.*, 672 F.2d at 264–65. Mere repetition of the statutory requirements in the interpretation is insufficient. *Cole*, 824 F.2d at 929. "The administrative interpretation relied upon must provide a clear answer to the particular situation in order for the employer to rely upon it." *Id.* at 928.

In *Cole*, the written agency materials at issue merely outlined the regulatory provisions and provided no specific guidance on the issue of whether "waiting time" when an assembly line was down was includable in the number of hours worked. *Id.* at 927. The regulations provided that such time would not constitute hours worked where the period was long enough for the employee to "use the time effectively for his own purposes." *Id., quoting*, 29 C.F.R. § 785.16. The Court held it was not possible to rely on the written materials because they provided no guidance as to whether the half-hour periods at issue were long enough for the employees to use the time effectively for their own purposes.

In *Home Insurance Co.*, the agency opinion letters stated that a certain retirement plan would not violate the Age Discrimination in Employment Act so long as the plan was not a subterfuge or a device to evade the Act. *Home Insurance Co.*, 672 F.2d at 265. The Second Circuit held

that the § 259 defense was unavailable because the letters provided no guidance as to what may constitute a subterfuge. *Id.* at 265; *accord, e.g. King v. Board of Ed. of City of Chicago,* 435 F.2d 295, 297 (7th Cir.1970), *cert. denied,* 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 649 (1971); *Central Missouri Telephone Co. v. Conwell,* 170 F.2d 641, 648 (8th Cir.1948).[8]

Each of the opinion letters relied upon by the City of Rome states that an addition of 15 minutes to the twenty-four hour tours of duty would satisfy the regulatory requirement, because the regulations provide no minimum amount of time by which a tour of duty must exceed twenty-four hours. Thus, if the City proves its good faith reliance upon and action in conformity with the letters once received, the City's continuation of the policy of the extended tours of duty would be protected by the defense and immune from attack.

The defense fails with regard to the second requirement of 29 C.F.R. § 553.222, that sleep time is excludable only if there is an agreement with the firefighters. The letters provide no guidance whatsoever on this requirement. Each simply recites the regulatory requirement. The two letters from Mr. Cohen opine that sleep time would be excludable "provided that this action is taken pursuant to an express or implied agreement between the employer and employees in this case." City of Rome's Motion for Summary Judgment, Exhibit I. Similarly, the letter of Mr. Smith states that the employer "may exclude sleep ... time from [a] shift of more than 24 hours pursuant to an express or implied agreement between the parties to exclude such time." *Id.,* Exhibit H.

Because the written agency interpretations provided no guidance on this issue, it was impossible for the City to rely upon them in concluding that the continuation in working constituted agreement. *See Cole,*

824 F.2d at at 928; *Home Insurance Co.,* 672 F.2d at 264–65.

In summary, the Court holds that after the receipt of the agency advisory opinion letters, the City may find protection in § 259 for reliance on them in the extension of the tour of duty. Its action in reliance on them with regard to the implied agreement question is not protected by § 259.

### V. Liquidated Damages

The recovery of liquidated damages under section 216 represents compensation for the delay in payment of amounts owing under the FLSA. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 715, 65 S.Ct. 895, 906, 89 L.Ed.2d 1296 (1945). An employer who seeks to avoid liquidated damages under the Act, bears the burden of proving that its violation was both in "good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Joiner v. City of Macon,* 814 F.2d 1537, 1539 (11th Cir.1987), (quoting *Reeves v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1352–53 (5th Cir.1980), *cert. denied,* 449 U.S. 1007, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981) (quoting *Barcelona v. Tiffany English Pub., Inc.,* 597 F.2d 464, 468 (5th Cir.1979)). The Court's decision to award liquidated damages becomes discretionary only after the employer carries its burden of proving good faith; and liquidated damages are mandatory absent a showing of good faith. *Id.*

In the instant case issues of fact exist as to whether the City violated the Act, and if so whether it acted in good faith. *See id.*

### VI. The Standing of the Union

The City has challenged the standing of the International Association of Firefighters, Local 349, (the Union) to be a plaintiff in this suit. The Court grants the City summary judgment on this issue.

---

**8.** It is true that to some extent this determination involves an evaluation of the level of specificity of the interpretation. An employer may feel hampered in its reliance on agency interpretation when that reliance may be subject to an after-the-fact judicial determination that the interpretation was insufficiently specific. In the instant case, however, as seen *infra,* the letters failed to address altogether the orally expressed theory of W & H's Robinette that the employees' continuation in employment "even for one day," constituted agreement under the Act. No fine distinctions on the necessary level of specificity therefore are required in this case.

Section 216(b), 29 U.S.C., provides that an action to recover for liability under the FLSA may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent in writing...." This provision of the FLSA was added as part of the Portal-to-Portal Act of 1947 and was entitled, "Representative Actions Banned." *See* Portal-to-Portal Act of 1947, Act of May 14, 1947, § 5. The courts that have addressed this issue have held that pursuant to § 16(b), a union lacks standing to maintain an action as a plaintiff under the FLSA. *See National Org'n for Women v. Sperry Rand Corp.*, 457 F.Supp. 1338, 1348–49 (D.Conn.1978); *E.E.O.C. v. A.T. & T. Co.*, 365 F.Supp. 1105, 1120–21 (E.D.Pa.1973), *modified*, 506 F.2d 735 (3rd Cir.1974).

It is true, as the plaintiffs contend, that once it is determined that some of the plaintiffs have standing, standing exists for purposes of determining that a case or controversy is before the Court under Article Three of the Constitution. *See American, Etc. v. Rabun County Chamber of Commerce*, 678 F.2d 1379, 1389 (11th Cir. 1982), *modified*, 698 F.2d 1098 (11th Cir. 1983); *see also, e.g., Watt v. Energy Action Education Foundation*, 454 U.S. 151, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Nevertheless, where it is clear that the plaintiff union is without standing to maintain this action, summary judgment in favor of the City on this ground is appropriate.

*VII. Defendant's Motion to Reconsider*

The City moves for reconsideration of the Court's Order which denied its Motion to Amend its Answer. In that Motion, the City sought to add two additional constitutional defenses. First, it sought to add a defense of immunity under the Tenth Amendment, because the City's firefighting operation is a traditional state government function. Second, it submits a general defense that application of the FLSA to the City under the instant circumstances violates the Tenth Amendment.

 The denial of the Motion to Amend is reaffirmed. As stated in the cases cited in the Court's prior Order, the decision to allow Amendment is within the discretion of the Court. Although Fed.R.Civ.P. 15 prescribes a liberal amendment policy, the Court need not allow an amendment that would be futile because it is without legal merit. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (complaint); *United States v. Article or Device Consisting of Biotone*, 557 F.Supp. 141, 143–44 (N.D.Ga.1982) (complaint); *see also Wedgeworth Fibreboard Corp.*, 706 F.2d 541, 546 (5th Cir.1983) (complaint); *Dabney v. Montgomery Ward & Co., Inc.*, 761 F.2d 494 (8th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985) (complaint); *Schaghticoke Tribe of Indians v. Kent School Corp., Inc.*, 423 F.Supp. 780, 783 (D.Conn.1976) (answer); *United States v. Levine*, 185 F.Supp. 889 (E.D.N.Y.1955) (answer).

 The City correctly admits that the defenses it proposes are without merit. The Supreme Court rejected these arguments in *Garcia* when it overruled *National League of Cities* and applied the FLSA to state and local public employers. While the City is correct that Fed.R.Civ.P. 11 provides that the signature on a pleading certifies that the pleading is warranted by existing law "or a good faith argument for the ... reversal of existing law," that Rule does not provide that such an argument entitles the City to an amendment of its Answer to raise such an admittedly meritless defense. The City is incorrect when it asserts the "closeness of the constitutional question." While the vote among the Justices on the Supreme Court in *Garcia* was close, the question is not close; the question is decided. This Court is bound by Supreme Court precedent. The Motion for Reconsideration is denied.

ACCORDINGLY, the Plaintiffs' Motion for Partial Summary Judgment is DENIED; the Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part: the International Association of Firefighters, Local 349, is DISMISSED as plaintiff from this action; Defendants' Motion to Reconsider is DENIED.